**Walter WISZNIA, Appellant,**

v.

**Gerald WILCOX, Appellee.**

No. 457.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 27, 1969.

Rehearing Denied April 3, 1969.

Harold Alberts, Corpus Christi, for appellant.

Wood, Boykin, Rylee & Wolter, Robert C. Wolter, Corpus Christi, Butler, Binion, Rice, Cook & Knapp, Louis Paine, Jr., Houston, for appellee.

## OPINION

GREEN, Chief Justice

This appeal is from a money judgment for plaintiff-appellee Gerald Wilcox against defendant-appellant Walter Wisznia after a trial before the court without a jury. It involves the construction of a written contract between these parties. No findings of fact or conclusions of law were requested or filed.

The facts pertinent to this appeal are substantially as follows: On October 11, 1963, appellant Wisznia as *Architect* entered into a written contract with Overlook Development Corporation as *Owner* to perform certain professional services in connection with the construction of the Executive House of Houston. Architect's fee was set at 7% of the cost of construction of the project. He was to be paid a certain amount in cash and a proportion of his fee as the apartments in the building were leased or sold, with the entire unpaid balance of his fee to become due two years after completion of the work. It was established that the amount of the architect's fee was $104,960.00 of which he had been paid only $13,750.00, that the balance had become due, and that he had sued the owner and been awarded an interlocutory judgment for said balance. It is clear from the evidence that Overlook Development Corporation is insolvent.

Appellant Wisznia entered into a written contract with appellee Wilcox, who is a qualified licensed structural engineer, to do the structural engineering on this project. Wilcox performed his part of the agreement, and there is no question raised concerning his said performance, nor of the amount of his fee. Under the terms of the contract appellant architect agreed as follows:

"* * * *We will pay you 3% of the cost of the structure as verified by the successful contractor.*"

The structural cost was stipulated, and of the total fee earned by appellee, the sum of $10,001.03 remains unpaid. The judgment of the trial court provided for recovery of said sum together with the additional amount of $3500.00 reasonable attorney's fees.

The contract between these parties further provided:

"*4.  PAYMENTS.  The engineer shall be paid in the same proportionate manner as the architect is being paid by the Overlook Development Corporation.*"

In his first point of error, appellant says that the court erred in construing the contract to require the architect (appellant) to pay to the engineeer (appellee) an amount in excess of the proportionate amount received by the architect from the building owner.

It is appellant's contention that in view of paragraph 4 of the contract he, as architect, was obligated to pay the structural engineer only if and when he, architect, was paid by owner, and in the same proportion of his fee as he, architect, was paid, and that since appellant had only been paid about 12½% of his fee by owner, he, appellant, was obligated to pay appellee only that same proportion of appellee's fee. This sum, to wit 12½% of the engineer's fee, had been paid to appellee by appellant.

■ The question before this Court is a matter of interpretation of the provisions of the contract between these two parties. Whether the parties to a transaction intended to make the payment of money conditional must be gathered from the four corners of the instrument and the language used therein, the situation of the parties, the subject matter and the purposes to be accomplished.

"A contract must be read, considered, and construed as an entirety, so that all provisions of the agreement will be taken into consideration and construed together to ascertain the meaning and effect of the instrument.  In other words, the entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties.  Therefore, as a general rule it will not be proper to rely on a single clause or paragraph alone, when attempting to ascertain the meaning of the agreement. * * *" 13 Tex.Jur.2d 269, Contracts § 113.

■ Although we have copied only the two paragraphs especially pertinent to the controversy, we have considered the entire contract between these parties and the situation as shown by the evidence in passing upon the issues raised by appellant's point of error.  The language on page 1 of the agreement contains an express, unqualified and unconditional promise on the part of appellant to pay appellee "3% of the cost of the structure as verified by the successful contractor."[1]  It is clear from such language, taken together with the entire contract, that it was the intention of the parties that appellee would be paid by appellant for the labor performed and services rendered, and that the obligation to pay was absolute.  If such was not to be the case, it should have been so expressed in unequivocal terms dealing with the possible insolvency of Overlook Development Corporation.  Paragraph 4 of the contract, copied hereinabove, does not refer to the possible insolvency of such corporation, nor does it limit in any degree the liability of appellant for appellee's fee.  It deals with when and how payment will be made.

■ If the parties intend that the debt shall be absolute, and fix upon a future event merely as a convenient time for payment, the debt will not be contingent, and if the future event does not happen as contemplated, the law will require payment to be made within a reasonable time.  Williston on Contracts, Third Edition, Vol. 5, § 799.

We feel that the principles set forth in Thos. J. Dyer Co. v. Bishop International Engineering Co., 6th Cir., 1962, 303 F.2d 655, 660, are apposite.  That was an action by a subcontractor against the general contractor in which the subcontract provided that no part of the price to be paid the subcontractor was to be due until five days

---

1.  As heretofore stated, there was no controversy over the amount of appellee's fee.

after the owner paid the general contractor. The 6th Court of Appeals held that such provision was designed to postpone payment for a reasonable time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor, and that the provision was not to require the subcontractor to wait for an indefinite time until the general contractor had been paid by the owner. In so holding, the court said:

"It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. * * * The solvency of the owner is a credit risk necessarily incurred by the general contractor, * *. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the owner. * * * he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and the subcontractor should contain an express condition clearly showing that to be the intention of the parties. * * *"

See, also, Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755, 1964.

The Texas cases of City of Seymour v. Municipal Acceptance Corporation, 96 S. W.2d 814, Tex.Civ.App. 1936, wr.dism. by agreement, and Tennant v. Buratti & Montandon, 215 S.W.2d 201, Tex.Civ.App., affd. 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742, relied on by appellant, are not applicable here. *Tennant* was a suit for recovery of a real estate commission based upon a completed sale of the property, in which a judgment granting recovery of a commission to the agent was reversed and rendered. The only language in the contract providing for payment of a brokerage commission was as follows:

"Should the Purchaser fail to consummate this contract as specified for any reason, * * * Seller shall have the right to retain said cash deposit * * * and shall pay to Agent therefrom the usual commission, * * *."

The appellant court held that the language was insufficient to comply with the Real Estate License Act, and that the Purchaser did not "fail to consummate this contract," and that there was no language in the contract which provided for a commission in the event of a completed sale. The case is not in point with the present appeal.

In *City of Seymour,* supra, the Court was called upon to construe the following provision:

"* * * It is agreed that the obligation to pay the deferred installments * * * is not a general obligation of said municipality * * * but only a special obligation payable from the net revenues of the light plant * * *."

The Court correctly held that payments on the debt were limited to funds created from the net revenues of the light plant. The facts there are not comparable to our situation.

The trial court in the present case did not err in rendering judgment against appellant architect for the $10,001.03 due appellee. Appellant's first point is overruled.

Appellant's second point is that the trial court erred in allowing attorney's fees. The point is subdivided by appellant in his brief under three sub-heads. The first has to do with the court having granted leave to appellee on the first day of trial

to file a trial amendment increasing the requested attorney fee from $2,500.00 to $3,500.00. Under the facts shown in the record, the filing of this amendment was a matter within the sound discretion of the trial court, and the facts show no abuse of such discretion. The first sub-point is overruled. The second subdivision is to the effect that because the plaintiff in his original petition, on which he went to trial, wrongfully overstated the amount due him, which error was subsequently cured by stipulation between the parties, the amount of attorney fees "should be substantially reduced." This sub-point is without merit, and is overruled.

Appellant's third subdivision under his second point is that there was no testimony to support the award of attorney fees. His argument makes clear that by *no testimony* he referred to no properly admitted competent evidence.

■■ This being a suit to recover for personal services rendered and labor done, the appellee upon proof of his cause of action was entitled to recover a reasonable amount as attorney's fees, provided he fulfilled the requirements of Art. 2226, Vernon's Ann.Tex.Civ.St. as to notice etc., *and provided proper proof of reasonableness was made.* The fact that his claim was made under a contract between the parties does not avoid the applicability of Art. 2226, the attorney's fee statute. See opinions of this Court in Danaho Refining Company v. Dietz, 398 S.W.2d 307, wr.ref. n.r.e., and Dueitt v. Barrow, 384 S.W.2d 214, n.w.h. There is no issue raised by appellant as to the notice required by the foregoing statute being properly given by appellee before suit was filed.

■ However the "reasonableness" of an attorney's fee in a suit where such fee is sought to be recovered under the statute is a fact issue, to be determined by the trier of facts only upon competent evidence. Great American Reserve Insurance Company v. Britton, 406 S.W.2d 901, 906, Tex.

Sup.Ct. Hearsay testimony is actually no evidence at all, and has no probative value. 24 Tex.Jur.2d p. 51 et seq., Evidence § 557.

The only evidence concerning a reasonable attorney's fee was given by the witness Hon. Dudley Foy, a practicing lawyer of Corpus Christi, Texas. He testified that he had examined the files of appellee's attorneys and the time records of both sets of appellee's counsel, and had noticed that according to such files and records they had a total of approximately one hundred fifteen hours of preparatory time in the case. He was then asked the following question:

"Q Mr. Foy, based on what you have gleaned from reviewing the file and the number of hours of counsels' time as reflected in the file as having been expended up to but not including the time spent in actual trial in Corpus Christi, state whether or not you have an opinion as to the reasonable value of services rendered and to be rendered to Plaintiff by counsel?"

Over the objection of appellant's counsel that the witness was not qualified to testify the amount of time another lawyer had put in the case, and that such testimony would be hearsay, the witness was permitted to answer:

"A Yes, I have an opinion based on the information which I have reviewed and the facts made available to me. The reasonable value of the preparatory services rendered under our usual and customary charges in this vicinity would be thirty dollars an hour, or, for a hundred and fifteen hours, $3,450.00 for the preparation work. As to the trial time, our usual and customary charges and the reasonable value of this type case, the value would be, in my opinion, not less than $250.00 a day. I understand this case actually commenced yesterday and today is the second day, insofar as court room time is

concerned. Taking two days at $250.00 for a single lawyer, which I think is appropriate in this case, the trial time would have a reasonable value of five hundred dollars. Preparatory time and trial time would be, together, some $3,950.00."

On cross-examination, he testified as follows:

"Q  Mr. Foy, do you know from your own knowledge how much time was put in?

A  I only know what the file reflects, Mr. Alberts.

Q  All of your testimony is based on the file?

A  Their file, the time records, and what they have told me.

MR. ALBERTS: Your Honor, under that testimony we ask that all of the witness' testimony be stricken in relation to what a reasonable figure would be. He now states it is based only on what they told him.

THE COURT: Overruled."

The only other evidence of Mr. Foy was in answer to cross-examination concerning a reasonable contingent attorney's fee in a suit like this for approximately $10,000.00, which he placed at $3,300.00.

■  There was no evidence given by appellee's counsel or by any one else concerning the accuracy of their files or who had prepared their time schedules, or the amount of hours they had spent in preparation of this case. In the absence of testimony connecting the opinion evidence of the expert witness with the accuracy of the facts he made the basis of such opinions, the evidence of said expert as to his opinion of a reasonable fee was based on hearsay, incompetent evidence, and the objections of appellant's counsel should have been sustained.

■  As to any evidence concerning a contingent fee, there was no testimony that appellee's counsel took the case on such fee. Our Supreme Court has held that the statute authorizing recovery of attorney's fees contemplates only such fee as would be reasonable for the litigant to pay his own lawyer, and not a speculative fee based on the uncertainties of litigation. Southland Life Insurance Company v. Norton, Tex. Com.App., 5 S.W.2d 767, holdings approved by Sup.Ct.

■  The recovery of the sum of $3,-500.00 reasonable attorney's fees contained in the judgment is disallowed.

The judgment is affirmed to the extent that it awards recovery of the sum of $10,-001.03, together with 6% interest from June 26, 1968, and the court costs in the trial court. The recovery of attorney's fees is reversed and rendered. Jackson v. Ewton, Tex.Sup.Ct., 411 S.W.2d 715, 719. Costs of appeal are charged, two-thirds to appellant and one-third to appellee.

Affirmed in part, reversed and rendered in part.