**SUCCESS MOTIVATION INSTITUTE, INC., Appellant,**

v.

**JAMIESON FILM COMPANY, Appellee.**

No. 5061.

Court of Civil Appeals of Texas, Waco.

Nov. 11, 1971.

Rehearing Denied Dec. 2, 1971.

Vernon L. Smith, Waco, for appellant.

Charles P. Storey, Dallas, for appellee.

## OPINION

JAMES, Justice.

Appellee Jamieson Film Company sued Appellant Success Motivation Institute, Inc. (hereinafter called SMI) for a $94,746.10 balance of debt alleged due and interest from October 1, 1969, plus attorney's fees under Article 2226, Vernon's Ann.Tex.St., plus exemplary damages in amount of $50,-000.00 and costs. Appellee-Plaintiff pitched his suit (Second Amended Original Petition) on the following alternative theories:

(1.) Upon a written agreement as evidenced by a letter dated June 18, 1969 (attached as Exhibit A to Plaintiff's pleadings) whereby Plaintiffs agreed to provide professional services in the production of a motion picture training film for Defendant, and to sell and deliver color prints thereof mounted on reels and packaged for a specified price, depending on the length of the film. Plaintiff alleged that it produced the film for Defendant and produced 350 color film prints thereof and delivered them to Defendant, together with protection internegatives, sound tract negatives, and related items.

(2.) That the film prints sold and delivered to defendant and were each a part or component of a kit or package put together by Defendant and sold by Defendant to its distributors, called a Distributorship Training Program; which also included manuals and tapes and that such film prints were "materials furnished" by Plaintiff to Defendant within the meaning of Article 2226, V.A.T.S.;

(3.) Upon "sworn account" within the meaning of Article 2226, V.A.T.S.; (Plaintiff's Pleadings were sworn to and supported by Exhibit B) and

(4.) Upon quantum meruit theory which theory was not thereafter urged.

Exhibit A, the letter which Plaintiff-Appellee alleges to be the written contract between the parties, is in the following language.

"JAMIESON FILM COMPANY
MOTION PICTURE PRODUCERS
SINCE 1916
3825 Bryan Street
Dallas, Texas 75204

AREA CODE 214—Taylor 3-8158
JUNE 18, 1969

Mr. Robert A. Green,
Director of Public Relations
Success Motivation Institute, Inc.
P. O. Box 7614
Waco, Texas 76710

Dear Bob:

This letter is to confirm our verbal agreement for your 45-50 minute 16MM color sales training film. The price of $16,-350.00 includes two versions of the basic film (#1-DPM, #2-DPL) with variations in main title and four internal scenes. This price includes our providing the office set, the speaker to camera set, complete camera and sound crew with all necessary production equipment, titling, editing and laboratory services, etc., through first answer prints.

It is understood that you will direct the film and supply the acting talent. You will also provide special props required in the speakers set.

The above price is based on four days stage shooting and a maximum of 8,000 feet of camera film exposed, processed and printed. In the event that actual production time and film use differs from these amounts, we will charge extra or credit a balance at the rates of $500.00 per shooting day and .25 per foot of film. We also will provide the release prints of these films but exact price will depend on the final length when the films are completed.

Based on a printing length of 1,600 feet, 200 or more color release prints of each version will be priced at $157.00 mounted on reel in can with double shipping case and take-up reel. Any variation under 1,600 feet will be credited @ .05 per foot; any variation over 1,600 feet will be charged @ .10 per foot. (NOTE: Footage price over 1,600 feet is adjusted to include larger reel, can and case if required).

Further, we understand that delivery of up to 300 prints of Version #1 may be required for your August 11 meeting in Houston.

Invoicing and payment will be as follows:

PRODUCTION:

(1). One-half due at start of production.

(2). One-half due on approval of #1-DPM Answer Print.

RELEASE PRINTS:

(1). One-half due on placement of print order.

(2). One-half due on delivery of print order.

Sincerely,

/s/ Lloyd B. Abernathy

Lloyd B. Abernathy,
Vice-President

ACCEPTED FOR SUCCESS MOTIVATION INSTITUTE, INC.

BY: /s/ Robert Arch Green
DATE: 6/18/69 ".

Exhibit B, the letter which Plaintiff uses to support his sworn account theory, is in the following language:

"October 17, 1969

Mr. Charles G. Williams
Success Motivation Institute, Inc.
P. O. Box 7614
Waco, Texas 76710

Dear Mr. Williams:

I attempted to reach you on the telephone today but without success. Hopefully this letter will be on your desk Monday and serve the same purpose.

In the past few weeks, Mr. Lloyd Abernathy of our Company has devoted con-

siderable time in discussing with you the cost figures on your recent film productions. I believe he has fully covered the pricing basis for these charges which are in full accordance with the agreement established prior to beginning production.

Although the agreement specified advance payments on placement of print orders, we extended the courtesy of credit to your company anticipating prompt payment after delivery was complete on each order. However, no payment has been received to date on prints, or in the extra charges incurred in the production phase. Below is a recapitulation of the outstanding balance with State Sales Tax omitted since you have furnished a Tax Exemption Statement.

| | |
|---|---|
| Production, Basic Charge | $16,350.00 |
| Production extras per Invoice | 2,493.10 |
| Previously Paid | (16,677.00) |
| Production Balance | $ 2,166.10 |
| Prints & Extra Internegs. (DPM) | 53,830.00 |
| Prints (DPL) | 38,750.00 |
| BALANCE DUE | $94,746.10 |

Since the agreement specified the balance due and payable on completion of each order, I request that you forward payment of the above total at this time.

Bruce Jamieson, President".

Yours very truly,

Trial was to a jury which found in accordance with the following numbered special issues that:

(1.) In signing the letter of June 18, 1969, Robert Arch Green had authority to act for defendant, SMI;

(2.) The sum of money owed by Defendant SMI to Jamieson for film prints, extra internegatives and production extras is $94,746.10;

(3.) The sum of money found to be a reasonable attorneys fee for Plaintiffs in this case is $13,275.00;

(4.) No answer and none necessary;

(5.) (A.) The Defendant SMI acted with malice in failing to pay any money to Plaintiff for the film prints furnished and delivered by Plaintiff;

(B.) Plaintiff should be awarded $6580.00 as exemplary damages;

(6.) Jamieson failed to make timely delivery of film prints to SMI; (but)

(7.) SMI suffered no damage as result of such failure;

(8.) (A.) SMI waived any complaint of late delivery by Jamieson; (and)

(B.) SMI is estopped to deny that Jamieson made timely delivery of the film prints.

The trial court entered judgment in accordance with the verdict in favor of Jamieson against SMI for $123,601.18, same being the debt of $94,746.10, interest of $9000.88 from October 1, 1969 to date of judgment, attorneys fees of $13,275.00, exemplary damages of $6580.00 and costs.

■ Appellant assails the trial court's judgment on four points, the first being that Appellee's pleadings, proof and special issues (submitted by appellee) are insufficient, incomplete and inadequate for the court to grant a judgment for any relief. We do not agree. Appellee-plaintiff Jamieson in its pleadings upon which it went to trial properly and sufficiently set up the letter of June 18, 1969 as a special written contract between the parties which was signed by representatives of both parties. The evidence supports this theory with the only fact issue raised (insofar as the existence of a contract is concerned) being whether or not Mr. Green had authority to act for SMI when he signed this agreement. The jury having found that Mr. Green did have such authority, (amply supported by the evidence) and no ultimate fact issue having been raised insofar as the other elements of the contract being concerned, the trial court's judgment was proper insofar as enforcing the contract is concerned.

The contract basically called for Jamieson to produce two versions of a sales train-

ing film, with Jamieson to provide the office set, the speaker to camera set, complete camera and sound crew with all necessary production equipment, titling, editing and laboratory services through the first print; whereas, SMI agreed to furnish direction for the film, supply the acting talent, and special props required in the speaker's set. The contract went on to provide that Jamieson would furnish release prints thereof to SMI, setting out the conditions and basis for the pricing thereof and providing for timing and manner of invoicing and payment.

The evidence shows that the basic trouble between the parties began because Mr. Norfleet, a vice-president of SMI who was the principal actor in the film, either failed or refused to stay with the script proposed for him, and thereby substantially prolonged the length of the film, increased the cost of production, as well as the unit cost of the release prints, and brought about the necessity of having two reels of film and reel cans for each release print instead of one as contemplated by the contract.

The jury's finding that SMI owed Jamieson the sum of $94,746.10 was within the scope of Jamieson's pleadings, and supported by the evidence.

■ Appellant in his first point in effect contends that the trial court should have submitted an issue to the jury inquiring whether or not the letter of June 18, 1969 constituted a contract, between the parties, and that in refusing to do so, the trial court committed error. We do not agree, because it is a well-settled rule of law that construction of written instruments is a question of law for the court to decide, and not a question of fact for the jury. Sun Oil Co. v. Bennett (Comm.App. 1935) 125 Tex. 540, 84 S.W.2d 447, opinion adopted by the Supreme Court; Brown v. Payne (Sup.Ct.1943) 142 Tex. 102, 176 S.W.2d 306. By that same token, determination of whether a written instrument constitutes a contract or not requires a construction of the instrument, and is

therefore addressed to the court and not the jury.

[5] We have carefully considered the entire record, and in our opinion the verdict covers all the disputed ultimate fact issues raised by the evidence, concerning SMI's liability under the contract, and appellant's First Point is overruled.

■ Appellant's Second Point is in the following language: "The trial court refused to submit issues upon appellant's theory of the case". However, appellant does not set out in his brief any issues which he says he submitted to the court, and which the court refused. Rule 418 subsection (c), Texas Rules of Civil Procedure contains inter alia, the following language: "If complaint is made of any charge given or refused, such charge shall be set out in full." Enlow v. Brown (Dallas Tex.Civ. App.1962) 357 S.W.2d 608, no writ history, dealt with a point almost identical to our appellant's second point, and the Dallas Court of Civil Appeals in overruling this point, had this to say: "In the first place the point is multifarious and too general to be entitled to our consideration. It attempts to lump together in one package all defensive special issues which appellant may have wanted the court to submit without particularizing or designating each issue separately. Thus the point as worded overlooks the possibility that one or more of the issues should have been submitted while possibly others should not have been submitted. (citing cases.)"

■ A point or assignment of error is multifarious when it embraces more than one specific ground of error or when it attempts in the one point to attack several distinct and separate rulings of the trial court. Johnson-Sampson Construction Co. v. W. & W. Waterproofing Co. (Amarillo Tex. Civ.App.1953) 274 S.W.2d 926, error refused, NRE.

Appellant's Third Point attacks that portion of the trial court's judgment awarding judgment against appellant for $13,275.00

attorneys fees pursuant to the jury finding in connection therewith. We sustain this contention.

Appellee contends that attorneys fees are authorized under Article 2226 V.A.T.S. on two theories: (1) That appellee's cause of action was on a "sworn account"; and (2) that the film prints sold and delivered by appellee to appellant constituted "materials furnished."

■ At the outset, let us recognize that Article 2226 is penal in character, and must be strictly construed. Van Zandt v. Fort Worth Press (Sup.Ct.1962), 359 S.W.2d 893. *Van Zandt* also recognizes and re-states the general common law rule that in the absence of contract to the contrary, every litigant will compensate his or its own counsel.

■ Our contract in the instant case makes no provisions for attorneys fees. Judge Calvert, speaking for the Supreme Court in his comprehensive and learned discussion of Article 2226 in Tenneco Oil Co. v. Padre Drilling Co. (Sup.Ct.1970) 453 S.W.2d 814, wherein attorneys fees were denied in a suit on a contract (to drill an oil well) points out (at p. 820) that "a suit based *primarily* (italics ours) upon a *contract* for a *product* or for a *general service* will not authorize an award of an attorney's fee merely because performance of the contract may require employment of others to render personal services or to perform labor." We think it is reasonable to assume from this reasoning that if a contract is *primarily* for a *product* or *general service* that attorneys fees are not authorized merely because performance of the contract may require *some* "materials furnished."

Meaders v. Biskamp (1958), 159 Tex. 79, 316 S.W.2d 75 involved a contract between the parties for sale and purchase of certain oil and gas leases. Plaintiff sued for balance of the purchase price and contended his suit was for a "sworn account" and was thereby entitled to attorneys fees.

The Supreme Court, in reforming the judgment so as to deny attorneys fees, held that "sworn account" does not mean transactions between the parties resting on *special contract*. In this connection the Supreme Court says at page 78: "It has been held that a sworn account is defined according to its popular sense and applies only to transactions between persons, in which there is a sale on one side and a purchase upon the other, whereby title to personal property passes from one to the other, and the *relation of debtor and creditor is thereby created by general course of dealing* (which may include only one transaction between the parties). *It does not mean transactions between parties resting upon special contract.*" (citing cases.)

"Special Contract" is defined in Eisenbeck v. Buttgen (Dallas Tex.Civ.App. 1970), 450 S.W.2d 696, no writ history, at page 702 as follows: " * * * a 'special contract' is one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter and such provisions are such as, if omitted from the ordinary contract, the law will never supply." Also, see Pines California, Inc. v. Miller (Eastland Tex.Civ.App.1969) 446 S.W.2d 91, no writ history, at page 95, quoting 17 C.J.S. Contracts § 10, page 584, the latter also pointing out that a special contract is always an *express* contract.

■ The contract in the instant case clearly meets the test of a "special contract" in our opinion, and why so? Because it calls first for the production of a film which in turn calls for the rendition of professional services. Production of this film was a joint endeavor in which both Jamieson and SMI took active parts, with Jamieson providing certain personnel and equipment, and SMI providing other personnel and equipment more particularly hereinabove pointed out. It called for a high degree of professional services and technical Personnel and equipment, partly provided by Jamieson and partly provided by SMI. When production of the film was completed, SMI showed it to its con-

vention in Houston before 400 to 500 people, including 139 distributors represented, together with management people and others. It is true that Jamieson prepared and furnished 350 prints of this film to SMI pursuant to this contract; however, it would be putting a strained construction on Article 2226 to call these prints "materials furnished". These release prints are rather a manufactured product provided pursuant to this special contract between the parties, which prints were used by SMI in their Distributorship Training Programs, but also were used to show at their convention.

■ However, be that as it may, the instant contract was *primarily* for professional services as well as a product, and *not primarily* for the furnishing of "materials" within the meaning of Article 2226.

■ Where the recovery is based on express contract, it may not at the same time be based on "sworn account" or on "materials furnished," the latter two being implied contract situations. This rule is stated by the Supreme Court in Woodard v. Southwest States, Inc. (Sup.Ct.1964), 384 S.W.2d 674 at p. 675 as follows: "Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the subject matter, there can be no implied contract." (citing several authorities.)

Appellee cites George Linskie Co. v. Miller-Picking Corporation (Sup.Ct.1971), 463 S.W.2d 170, wherein attorneys fees were allowed on theory of "materials furnished"; however, the Supreme Court clearly points out that there was no agreement shown for a "turn-key" job on repair of the air conditioners. In our instant case there was such a contract. For this reason our case is analogous to *Tenneco* and distinguishable from *Linskie*.

For the above reasons, appellants' third point is sustained.

■ Appellant's fourth and last point attacks that portion of the trial court's judgment against appellant for $6580.00 exemplary damages. We sustain this contention, and say the trial court should have disregarded the jury's answers to Special Issues Nos. 5A and 5B. This case falls into the category of a suit for breach of contract, for which the proper redress is money judgment for actual damages, but for which exemplary damages are not authorized. In A. L. Carter Lumber Co. v. Saide (1943), 140 Tex. 523, 168 S.W.2d 629, Judge Alexander speaking for the Supreme Court says: "The jury found that the seller was harsh and unreasonable in its dealings with the purchaser, and that its acts in cancelling the contract were willful and oppressive and were accompanied with malice. Based upon these findings, the trial court allowed a recovery for exemplary damages, and the Court of Civil Appeals affirmed the judgment. We are not in accord with this holding. The rule in this State is that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice." (citing several authorities in support thereof).

Appellant's fourth point is therefore sustained.

We accordingly affirm the trial court's judgment with the exception of the following changes in which respects the judgment is reformed:

The $13,275.00 attorneys fees and the $6580.00 exemplary damages are hereby deleted from the judgment. Jamieson is awarded judgment against SMI for the debt of $94,746.10 plus interest at the legal rate of 6% per annum from October 1, 1969 and costs of suit.

The costs of appeal are taxed one-half against appellant SMI and one-half against appellee Jamieson.

Reformed and affirmed.