**ENNIS BUSINESS FORMS, INC.,**
**Appellant,**

v.

**Sam TODD, Appellee.**

**No. 5427.**

Court of Civil Appeals of Texas,
Waco.

May 1, 1975.

after September 1, 1969, the defendant would pay him the sum of $200 per month, payable *after* the termination of his employment with defendant; that, relying upon this contract, the plaintiff continued working for the defendant for a term of 28 months after September 1, 1969, until December 31, 1971; and that the defendant has refused to honor the agreement to pay the plaintiff's "deferred salary of $200.00 per month." The plaintiff prayed for a recovery of $5,600 because of this asserted default by the defendant, plus reasonable attorney's fees. The defendant answered with a general denial, and a special plea that its president was without the power to make the contract sued upon because it was "of an unusual and extraordinary nature" and was not authorized by the defendant's corporate by-laws or board of directors.

Trial was to a jury which found that "Leonard Gehrig, as President of Ennis Business Forms, Inc., in September, 1969, entered into an agreement with Sam Todd to provide for a deferred monthly salary increase of $200.00 a month"; and that a reasonable attorney's fee for prosecuting the plaintiff's claim is $1,500. The parties stipulated that the plaintiff continued in the defendant's employment after September 1, 1969, for a term of 28 months. Upon the verdict and the stipulation, judgment was rendered that the plaintiff recover the sum of $7,100.

Jackson, Walker, Winstead, Cantwell & Miller, Ralph E. Hartman and Jack Pew, Jr., Dallas, for appellant.

Frank R. Jewell, Dallas, for appellee.

HALL, Justice.

The plaintiff, Sam Todd, pleaded that in 1969 he was an employee of the defendant, Ennis Business Forms, Inc.; that he determined to retire effective December 31, 1969; that, to induce him to not retire, the president of defendant company, Leonard Gehrig, acting on behalf of the company, orally contracted with the plaintiff that for every month he worked for the defendant

In Texas, by statute, the board of directors of a corporation, not its president, is charged with the duty of managing the company business and affairs. Accordingly, it is the settled rule in this state that the president of a corporation is not invested with actual or apparent authority to bind his company by contract merely because of his position. Generally speaking, to so bind the company the president must be authorized "by the statutes of this state, the terms of the by-laws, or by appropriate action taken by the directors, trustees, or other governing body" to make the contract. Manufacturers' Equipment Co. v.

Cisco Clay & Coal Co. (Tex.Com.App., adopted, 1929), 118 Tex. 370, 15 S.W.2d 609, 613. It was the plaintiff's burden, therefore, to establish that the contract upon which he sues was within the scope of Gehrig's authority as the defendant's president. 14 Tex.Jur.2d 458–459, Corporations, Sec. 354.

■ The contract in question was not expressly authorized by the defendant's board of directors, and the plaintiff does not contend that it was. However, the defendant's by-laws provide, in part, that its president "shall be the chief administrative officer of the corporation" and that he "shall have the power and authority to execute bonds, mortgages, and other contracts of the corporation in the ordinary course of the business of the company." It is our view that Gehrig was clothed by the by-laws with authority to grant the plaintiff the raise in question. Moreover, there is an abundance of evidence which shows that a part of Gehrig's duties involved the hiring of non-officer employees of the company, setting their salaries, and granting them pay raises. There is proof that the plaintiff was not an officer of the corporation at the time in question.

■ In its brief, the defendant tacitly admits that Gehrig was authorized by the by-laws to grant the plaintiff the pay raise, but it argues under its first point of error that the contract in question is not one "in the ordinary course of the business of the company," permitted by the by-laws, and is in fact unusual and extraordinary, and therefore was outside Gehrig's authority, because of the deferred payment provision in it; and it asserts that there is no evidence to support the finding to the contrary implied in the judgment. A proper testing of this complaint requires that the evidence in the case, and every reasonable deduction that may be based thereon, be viewed and considered by us in a light most favorable to the questioned finding. Douglass v. Panama, Inc. (Tex.Sup.1974), 504 S.W.2d 776, 777.

■ The fact that the president of a corporation might be generally empowered to hire and fire employees, and set their salaries, would not authorize him to make a contract of an unusual and extraordinary nature, not directly authorized by the directors, for an employee's services. Leak v. Halaby Galleries, Inc. (Tex.Civ.App.—Dallas, 1932, writ ref.), 49 S.W.2d 858, 860; Nelms v. A & A Liquor Stores, Inc. (Tex.Civ.App.—Eastland, 1969, writ ref., n. r. e.), 445 S.W.2d 256, 259. However, such contract is not extraordinary or unusual if the circumstances surrounding its making "would have justified an ordinary competent person, familiar with the situation and with the ordinary methods of business, considering the matter in the light of every day experience, to say without serious hesitation that the making of [the] contract formed a natural and ordinary part" of the company's business at the time in question. Babicora Development Co., Inc., v. Edelman (Tex.Civ.App.—El Paso, 1932, writ dism.), 54 S.W.2d 552, 555.

At all pertinent times, Gehrig was the defendant's president. He is now retired. As a part of his duties, Gehrig was authorized to, and did, set the salaries of non-officer employees of the company denominated in the testimony as "management employees", meaning non-officer employees who were "concerned with the supervison and handling of the financial aspects of the company as opposed to the production aspects." There were six or eight employees who filled this classification. The plaintiff was one of them. They were located closely together physically upon the defendant's premises, and near Gehrig's office. They worked closely with each other and with Gehrig in making decisions which affected the welfare of the company. They saw each other daily, unless one was absent from the premises for some reason. It was not their custom to operate on a formal basis, and there were many discussions and decisions on a day-by-day basis among them involving company manage-

ment that were not formally reduced to writing. These included matters pertaining to salary, many of which, including the salary increase in question, were communicated orally to the assistant treasurer in charge of payrolls.

The plaintiff is an accountant. He left self-employment in 1965 to go to work for the defendant. It was Gehrig who hired him on behalf of the company and set his beginning salary, and who later set his annual raises. At the time the plaintiff was hired, the defendant had a pension plan for its employees which was 100% company-funded, but the plaintiff was too old to participate in it. By the summer of 1969, the plaintiff was 69 years of age. His salary with the defendant was $10,000 per year. He was then eligible to receive $3,600 annual federal social security benefits if he should retire; and he had given some thought to the idea. Around September 1st of that year, a young accountant was hired into the company in a minor capacity, but at a salary of about $4,000 per year more than the plaintiff was making. This was very upsetting to the plaintiff. He told Gehrig that because of it he was quitting. Gehrig testified that he was convinced the plaintiff intended to leave the company "if nothing happened in his favor," and that the company "could ill afford to lose him," for reasons assigned in his testimony. He concluded the plaintiff's salary should be raised about $2,000 per year, and so instructed the treasurer of the company. And although he doesn't specifically remember telling the plaintiff that the salary increase would be paid to plaintiff "as a retirement monthly salary," he testified, "I could have said that. It didn't make any difference. I mean, he could of had his option to do it, we will say. I mean, that wasn't a case in point. That wasn't material in other words. There could have been some conversation about [this]." Officers of the company have been awarded compensation payable after retirement on a number of occasions. Because these involved officers, they were handled by the board of directors. Gehrig testified that when the plaintiff stated he was quitting, "I didn't get really upset. We had folks there that would come in to me and say 'I'm going to quit,' and 'I don't like so and so and unless something'—they give me ultimatums all the time, and I didn't get too upset about it, because we just needed to compromise something or other and that was all. I was kind of referee there a little bit." He said, "It was rather difficult for us to get people to come to Ennis to live, and we tried to find what folks wanted and to do our best to provide it for them, to get them. Sometimes it was deferred compensation, sometimes it was adding to their years of service credit for the pension plan, and we worked various arrangements with different people according to their needs." He said that it was "basically" this company policy which led to the contract in question with the plaintiff.

■ The evidence we have recited shows that the contract in question was made within an established, functioning policy of the defendant company for the company's benefit. It is legally sufficient to support the questioned finding.

The cases cited and relied upon by the defendant for a different holding are distinguishable on their facts and are not controlling. In Sacks v. Helene Curtis, 340 Ill.App. 76, 91 N.E.2d 127 (1950), a contract made without the knowledge of the company's board of directors, which guaranteed a company salesman a percentage of gross sales as opposed to net profits, was required to have approval of the company directors because it could conceivably bankrupt the corporation. In Leak v. Halaby Galleries (Tex.Civ.App.—Dallas, 1932, writ ref.), 49 S.W.2d 858; Babicora Development Co. v. Edleman (Tex.Civ.App.—El Paso, 1932, writ dism.), 54 S.W.2d 552; Brown v. Grayson Enterprises, Inc. (Tex.Civ.App.—Dallas, 1966, writ ref., n. r. e.), 401 S.W.2d 653, and Nelms v. A & A Liquor Stores, Inc. (Tex.Civ.App.—East-

land, 1969, writ ref., n. r. e.), 445 S.W.2d 256; the courts refused to approve contracts not authorized by company directors which purported to employ key personnel of the company-employers for terms of four years and life. In our case, the plaintiff's employment, upon which the amount of deferred compensation would be computed, was terminable at the will of the defendant.

The defendant's first point of error is overruled.

 The award of attorney's fees to the plaintiff is based upon the part of Article 2226, Vernon's Ann.Tex.Civ.St., which permits an allowance of attorney's fees to one who obtains a judgment upon a claim for services rendered. In its second and final complaint the defendant assigns error to the award contending that the provision in the plaintiff's contract for deferred payment makes the agreement a "special contract" which is outside the scope of Article 2226. The defendant argues, also, that this suit is not to recover for services rendered, but is based upon an asserted breach of an express contract.

The plaintiff directly pleaded that his claim against the defendant is for personal services rendered. The proof supports this pleading. The fact that an action to recover for services rendered is based upon an express contract of employment between the parties will not prevent the recovery of attorney's fees. Huff v. Fidelity Union Life Ins. Company, 158 Tex. 433, 312 S.W.2d 493, 498 (1958); Wisznia v. Wilcox (Tex.Civ.App.—Corpus Christi, 1969, writ ref., n. r. e.), 438 S.W.2d 874, 878.

A contract containing provisions and stipulations not found in the ordinary contract relating to the same subject matter, which, if omitted from the ordinary contract would not be supplied as a matter of law, is a "special contract." 17 C.J.S. 584, Contracts § 10; Pines California, Inc., v. Miller (Tex.Civ.App.—Eastland, 1969,

no writ hist.), 446 S.W.2d 91, 95; Eisenbeck v. Buttgen (Tex.Civ.App.—Dallas, 1970, no writ hist.), 450 S.W.2d 696, 702; Success Motivation Institute, Inc. v. Jamieson Film Co. (Tex.Civ.App.—Waco, 1971, no writ hist.), 473 S.W.2d 275, 281. Article 2226 has no application to a suit founded upon special contract. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 78 (1958); Eisenbeck v. Buttgen, supra.

The record shows that our parties agreed upon the deferred payment of the plaintiff's salary increase for the mutual convenience of both parties. However, this is not a provision which, if omitted, the law would not have supplied. If the parties had not agreed upon a time certain for the payment of the plaintiff's wages, then the law would have required payment to be made within a reasonable time. Wisznia v. Wilcox, supra, 438 S.W.2d 874, 876.

The defendant's points and contentions are overruled. The judgment is affirmed.