Ted McWILLIAMS,
Appellant/Cross-Appellee,

v.

Adrian GILBERT and Technomag
Corp., Appellees/Cross-Appellants.

No. 01–85–0799–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 24, 1986.

Rehearing Denied Aug. 7, 1986.

Bruce H. Beck, Fagan & Rigely, San Antonio, for appellant/cross-appellee.

James H. Pearson, DeLange, Hudspeth, Pitman & Katz, Houston, for appellees/cross-appellants.

Before LEVY, DUNN and DUGGAN, JJ.

OPINION

DUGGAN, Justice.

This is an appeal from a summary judgment awarding the guarantors of a promissory note recovery against its maker under an indemnity agreement.

Ted McWilliams, the appellant, formed a limited partnership, Goose Creek Baytown, Ltd. ("the Partnership"), with Adrian Gilbert and Technomag Corporation, the appellees, for the purpose of building a shopping center in Baytown. Ownership in the Partnership was allocated 49.5 percent to appellant and 50.5 percent to the appellees. Because McWilliams had a previous partnership with Bernard Lifshutz for the same development, it was necessary to purchase Lifshutz's interest in the project for $60,000. McWilliams signed a promissory note dated October 15, 1981, payable to Lifshutz or his order, for the purchase amount. Gilbert and Technomag signed a "guarantee agreement" to secure the note, and McWilliams thereafter signed the indemnity agreement that is the basis of this suit.

After the Partnership paid the Lifshutz note and McWilliams did not reimburse the Partnership in accordance with the appellees' interpretation of the indemnity agreement, Gilbert and Technomag filed suit against McWilliams. McWilliams answered and filed a counterclaim seeking reformation of the promissory note, the "guarantee agreement," and the indemnity agreement to reflect what he contended to be the parties' true agreement. McWilliams also alleged in his counterclaim that the appellees breached their fiduciary duty in their management of the Partnership, and thereby damaged him.

The appellees then moved for severance of appellant's counterclaim and for summary judgment in their action on the indemnity agreement. The trial court granted partial summary judgment in favor of the appellees for $65,132.38, plus interest and attorney's fees. Thereafter, the court severed appellant's counterclaim and made final the summary judgment entered previously.

At the hearing on McWilliams' motion for new trial, the trial court reformed its earlier judgment in order to credit McWilliams' 49.5% interest in the Partnership, reducing the sum awarded to the appellees to $32,891.75 plus interest, but leaving the attorney's fees previously awarded unchanged. McWilliams asserts five points of error. Gilbert and Technomag assert a single counterpoint.

A summary judgment movant has the burden of conclusively proving all the essential elements of his cause of action or defense as a matter of law. See City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex.1979). When deciding if a fact issue exists which precludes summary judgment, the court must assume the evidence favorable to the non-movant to be true, must indulge every reasonable inference in favor of the non-movant, and must resolve any doubts as to existence of a genuine fact issue in favor of the non-movant. See Montgomery v. Kennedy, 669 S.W.2d 309, 310–11 (Tex.1984).

Appellee's motion for summary judgment was supported by Adrian Gilbert's affidavit, which stated that "Technomag Corporation, as general partner of, and on behalf of Goose Creek Baytown, Ltd.," made the payments due under the promissory note; that under the terms of the indemnity agreement, McWilliams was to reimburse Technomag "in its capacity" as general partner; and that the reimbursement had not been made.

McWilliams' controverting affidavit asserted that it was never the parties' intention that the note to Lifshutz be paid by him or by the appellees in their individual capacities, but rather by the Partnership; that the note was never in default, but was

paid by the Partnership with Partnership funds "prior to any default" by McWilliams and "in accordance with the agreements between" the parties; and that the appellees never made payments in their individual capacities. The affidavit further recited that the indemnity agreement did not provide that he, McWilliams, was to be personally liable to the appellees, but that "[r]eimbursement, if any, to plaintiffs for monies paid on said Promissory Note was to be made out of the first monies distributed or available to be distributed to [McWilliams] from the Partnership...."

The indemnity agreement, which was offered as an exhibit by both parties, reads in pertinent part:

[Appellant] hereby covenants and agrees to reimburse [Appellees] for all sums paid or to be paid by [Appellees] on or with respect to the indebtedness evidenced by the original note, both principal and interest. *Such reimbursement shall be made from and out of the first monies distributed or to be distributed to [Appellant] by or from Goose Creek Baytown, Ltd.*, a Texas Limited Partnership (hereinafter sometimes referred to as the "Partnership").

(Emphasis added).

McWilliams asserts in his first point of error that the trial court erred in holding as a matter of law that he was personally obligated to reimburse the appellees. He contends that the above-quoted language specifically provides for reimbursement to be made from proceeds distributed or to be distributed to McWilliams' partnership interest, rather than from him personally.

On its face, the above-quoted and emphasized language of the agreement unambiguously restricts the appellees' reimbursement from McWilliams to a designated specific source, i.e., his interest in Partnership distributions, "the first monies distributed or to be distributed to [McWilliams] by or from the Partnership."

In holding McWilliams liable, the trial court apparently construed the agreement to be of no controlling effect, insofar as it purported to restrict the source of reimbursement to appellees by McWilliams.

Appellees urge, and the trial court apparently agreed, that the indemnity agreement is governed by the language of Tex.Bus. & Com.Code Ann. sec. 3.105(a)(6) (Vernon 1968), which reads:

(a) A promise or order otherwise unconditional is not made conditional by the fact that the instrument

\* \* \* \* \* \*

(6) indicates a particular account to be debited or any other fund or source from which reimbursement is expected ...

However, this section of the Business and Commerce Code lists conditions within *negotiable instruments* which do not impair negotiability. The section is not controlling in the instant case because an indemnity agreement is not a "negotiable instrument," as defined in Tex.Bus. & Com.Code Ann. sec. 3.104 (Vernon 1968).

The cases cited by appellees are likewise inapplicable to our situation. Two of them involved negotiable instruments wherein the restrictive language in the instruments was found not to impair negotiability or the indebted party's obligation to pay. *Grant Road Public Utility District v. Coulson*, 638 S.W.2d 616, 618 (Tex.App.—Houston [1st Dist.] 1982, no writ) (utility district bond anticipation notes); *Morris Plan Insurance Co. v. Wells*, 387 S.W.2d 84, 87 (Tex.Civ.App.—Fort Worth 1965, no writ) (insurance company debenture coupons).

Two other cases cited by appellees involve judicial construction of contract clauses. In each instance, a reading of the instrument as a whole showed the intention of the parties that the clause in question was to be interpreted as a covenant and not as a condition precedent, which would bar liability. *Hohenberg Brothers Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976); *Wisznia v. Wilcox*, 438 S.W.2d 874 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.).

The indemnity agreement before us is not a negotiable instrument. Neither does our examination of the "four corners" of

the writing compel the conclusion that McWilliams' reimbursement obligation is not restricted to partnership distribution proceeds due him. Appellee's exhibit thus shows on its face a specific restriction in appellant McWilliams' liability on the agreement. Appellant's first point of error is sustained.

█ In his fifth point of error, appellant asserts that the trial court erred in severing the appellees' original claim from his compulsory counterclaim and in entering a final judgment on appellees' original claim.

Compulsory counterclaims are governed by Tex.R.Civ.P. 97(a) (Vernon 1979):

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

McWilliams' counterclaim against the appellees is compulsory; i.e., it involves the same parties and arises out of the same transaction that is the subject matter of appellees' claim.

The full agreement underlying the creation of the Partnership resulted in McWilliams' execution of the Lifshutz promissory note, appellees' execution of the "guarantee agreement," and McWilliams' execution of the indemnity agreement. The last of these instruments, McWilliams' guaranty agreement, which in isolation is the basis of appellees' suit, is secured by McWilliams' interest in the Partnership.

McWilliams' counterclaim alleges, among other contentions, mismanagement and self-dealing by the appellees toward the Partnership in breach of the appellees' fiduciary obligation as managing partner. This breach resulted in a loss to the Partnership and to McWilliams' interest. He alleges damages in excess of $60,000, requests an accounting, and asks the court "to reform the documents to reflect the entire agreement of the parties." The indemnity agreement refers to the Partnership and states the restriction upon McWilliams' obligation to reimburse the Partnership (as discussed in point of error one); it thus shows intrinsically that a fuller agreement exists among the partners than is spelled out in the note, "guarantee agreement," and indemnity agreement.

Whether McWilliams is indebted under the indemnity agreement will be inextricably interwoven with the reformed terms of the three instruments, if reformation is granted as appellant's counterclaim seeks. Accordingly, final relief centered on the indemnity agreement alone is premature. The trial court's severance of McWilliams' counterclaim was error. *See Bohart v. First National Bank in Dallas*, 536 S.W.2d 234, 236 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.). Appellant's fifth point of error is sustained, and the order of severance is vacated.

Because appellant's first and fifth points of error are dispositive of the appeal, it is unnecessary for us to deal with appellant's remaining points of error or cross-appellants' crosspoint. Tex.R.Civ.P. 451.

The summary judgment is reversed, the order of severance is vacated, and the cause is remanded to the trial court.