**TEJAS GRAIN MAKERS, INC.**

v.

**CACTUS FEEDERS, INC.**

No. 07–87–0308–CV.

Court of Appeals of Texas, Amarillo.

Dec. 15, 1988.

Charles R. Watson, Jr., William A. Hill, Culton, Morgan, Britain & White, Amarillo, for appellant.

William Hunter, Hunter & Oelke, Dalhart, for appellee.

Before REYNOLDS, C.J., and BOYD and PIRTLE, JJ.

PIRTLE, Judge.

This case involves interpretation of the price and payment provisions of a contract for the purchase of corn. The seller, Tejas Grain Makers, Inc. (Tejas), has perfected this appeal challenging the trial court's granting of a summary judgment in favor of the purchaser, Cactus Feeders, Inc. (Cactus). By two points of error, Tejas challenges (1) the trial court's failure to grant Tejas' motion for summary judgment, and (2) the trial court's granting of Cactus' motion for summary judgment. For the reasons to be expressed, Tejas' points of error are overruled and the judgment of the trial court is affirmed.

On March 17, 1986, Cactus contracted to purchase 340,000 bushels of dry corn from Tejas. The dispute centers around the following provisions of the contract:

PRICE: Monthly average of daily midpoint for "Corn—North of Canadian River", quoted by Texas Department of Agriculture for ten months beginning November 1, 1986 and ending August 31, 1987.

PAYMENT: $2.00/bushel upon delivery of contracted bushels with monthly payments for One–Tenth (¹⁄₁₀) of bushels at respective monthly average price less $2.00. Moisture premium will be added to $2.00 payment.

Cactus made a $2.00 per bushel advance payment to Tejas upon delivery of the corn. Thereafter, during six of the ten months in the contract period, the monthly average of

daily midpoint for "Corn—North of Canadian River" fell below $2.00 per bushel.

Cactus requested that Tejas refund the difference between the advance payment of $2.00 per bushel and the contract price for each of the six months that the price fell below $2.00. Tejas then filed suit for a declaratory judgment, claiming that the parties intended to establish a $2.00 per bushel floor on the price. Cactus filed a counterclaim claiming that it was entitled to a refund of the difference. Both parties filed motions for summary judgment asserting that the contract was unambiguous and that there were no material issues of fact. The only summary judgment evidence tendered on the issue of the contractual intent of the parties was the contract itself, verified by affidavits. The trial court denied Tejas' motion, granted Cactus' motion, and held that Cactus was entitled to recover the difference between the advance payment and the contract price.

In its first point of error, Tejas contends that the contract is unambiguous and that the trial court erred in construing the contract to set a fluctuating market price rather than a price floor at $2.00 per bushel. Tejas further contends that the trial court erred in denying Tejas' motion for summary judgment because the contract does not demonstrate any intent on the part of the parties to require Tejas to repay any portion of the advance payment. In its second point of error, Tejas advances an alternative theory for reversal, contending that in the event the contract is ambiguous, the case should be remanded for a determination of the true intent of the parties.

■■■ At the outset, we must consider general rules of contract interpretation to determine if the contract at issue is ambiguous. The primary concern of the court is to determine the intent of the parties as expressed in the instrument and give effect to that intent. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980). A contract must be construed in its entirety and each part considered in relation to every other part. *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333 (Tex.1980). The language of a contract must be given its plain grammatical meaning, unless that meaning in the context of the document as a whole would defeat the intent of the parties. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527 (Tex.1987).

We have considered the entire contract, although only the two paragraphs especially germane to the dispute have been reproduced above, and we find that it is unambiguous. The price provision clearly establishes a definite price for the corn, ascertainable from the Texas Department of Agriculture. Both parties intended that the corn would be priced over a ten month period at the monthly average of the daily midpoint price for Corn—North of Canadian River. The payment provision determines how and when the price is to be paid. Although not directly in point, the case of *Wisznia v. Wilcox*, 438 S.W.2d 874 (Tex. Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.) is helpful in analyzing the interplay of the price and payment provisions.

*Wisznia* involved a suit between an engineer and an architect to recover payment for services rendered in the construction of an apartment building. Under the "price" provision of the contract, the architect agreed to pay the engineer 3% of the cost of the building. Under the "payment" provision, the architect agreed to pay the engineer "in the same proportionate manner as the architect is being paid by the [owner]." The owner became insolvent and did not pay the architect. The architect contended that the payment provision contained a condition precedent to his obligation to pay the engineer, and that he was therefore not obligated to pay.

The Corpus Christi Court of Civil Appeals held that the contract contained an express, unqualified, and unconditional promise to pay the engineer 3% of the cost of the building. The payment provision merely fixed a convenient time for payment. Since the time for payment never arrived due to the owner's insolvency, payment to the engineer was required within a reasonable time. *See also Gulf Construction Co. v. Self*, 676 S.W.2d 624 (Tex.App.

—Corpus Christi 1984, writ ref'd n.r.e.) and cases cited therein reaching similar results.

 In this case, the price provision is an express, unqualified, and unconditional agreement establishing the price at the monthly average of the daily midpoint for Corn—North of Canadian River, as quoted by the Texas Department of Agriculture for the ten month period beginning November 1, 1986, and ending August 31, 1987. The payment provision merely establishes the timing for implementation of the price provision and it does not create a price floor. There is nothing in the payment provision that qualifies or changes the price provision. By expressly agreeing to a fluctuating market price, Tejas as seller assumed the risk that prices would fall and Cactus as purchaser assumed the risk that prices would rise. To imply a price floor would unjustly hedge the risk assumed by Tejas and improperly imply a covenant concerning a matter specifically covered by the written terms of the contract. *Exxon Corp. v. Atlantic Richfield Co.*, 678 S.W. 2d 944 (Tex.1984). We conclude that the trial court did not err in determining that the contract was clear and unambiguous in expressing the intent of the parties to set a fluctuating market price and not a price floor.

We must now consider the second prong of Tejas' first point of error concerning the obligation of Tejas to rebate or repay that portion of the $2.00 per bushel advance payment in excess of the stated contract price. Tejas contends that the contract's silence concerning this contingency raises the question of whether such an obligation should be implied by the trial court. We are mindful of the principal that there can be no implied covenant as to a matter specifically covered by the written terms of a contract. *Exxon Corp. v. Atlantic Richfield Co.*, 678 S.W.2d at 947; *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039 (1928). Moreover, a covenant will be implied only if (1) it is so patently obvious that there was no need to spell it out in the agreement or, (2) it is absolutely essential in order to give effect to the purpose of the contract as a whole. *Danciger Oil & Refining Co. of Texas v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941).

The contract at issue did not specifically address the obligations of the parties in the event the market price fell below $2.00 per bushel. It is clear, however, that the parties intended to allow Cactus a credit of $2.00 per bushel against the fluctuating market price. When the market price fell below $2.00 per bushel, Cactus was left with a credit balance. We conclude that under the facts of this case, the law will imply an obligation to repay this credit balance in order to give effect to the purpose of the contract as a whole.

The disposition of point of error number one also disposes of point of error number two. The judgment of the trial court is affirmed.