Robert R. JOINES et ux., Appellants,

v.

Kathleen BURKE, Appellee.

No. 1034.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1976.

Daniel E. Hayes, Uher & Hayes, Bay City, for appellants.

James R. Clark, Black, Hebinch, Hargrove & Clark, Houston, for appellee.

## OPINION

NYE, Chief Justice.

This is a declaratory judgment suit brought by the plaintiffs, Robert R. Joines and wife, Nettie Mae Joines, against defendant, Kathleen Burke, seeking to obtain a judgment declaring that a contract for the sale of certain real property belonging to the plaintiffs located in Jackson County, Texas, was unenforceable, null and void. Trial was before the court without intervention of a jury. The trial court entered judgment declaring that the contract, made the basis of this suit, obligated the defendant purchaser, at her expense and upon her initiative, to undertake a title suit (the same referred to in the contract). The court found that the delay in initiating the

suit was not unreasonable nor was it undue delay. The effect of the judgment was to deny the plaintiffs sellers the relief sought and left the parties where the court found them, i. e. both the sellers and purchaser subject to the contract. From this judgment, the plaintiffs (sellers) have duly perfected their appeal.

The plaintiffs reside on approximately 100 acres of land located in a townsite of Francitas in Jackson County, Texas. Plaintiffs have lived on the land since April of 1927. Plaintiffs' title to the land was alleged to be a limitation title as opposed to record title. On November 18, 1969, the plaintiffs entered into a contract for sale of the land with the defendant. The contract provided that the plaintiffs would sell and convey such property to the purchaser for $125.00 per acre, payable by the purchaser upon the entry of a final judgment adjudicating title to the subject property to be vested in the sellers. The contract, under the heading "Special Conditions" had the following provisions:

"It is recognized that Seller has a limitation title as opposed to record title and Seller agrees to cooperate with Purchaser at all reasonable times and places in an effort to diligently obtain a judgment of the District Court of Jackson County, Texas awarding legal title to Seller so that this contract may be consummated as rapidly as possible."

The sellers complain of the trial court's refusal to set the contract aside because of the unreasonable delay of the purchaser in performing her part of the contract. The evidence before us is relatively undisputed, but it is unclear in some instances because the sellers (appellants) failed to include in this record some of the exhibits introduced into evidence in the trial court.

After the execution of the contract (November 18, 1969), the purchaser hired the County Surveyor, Mr. Atkins, to survey the subject property. The exact date the purchaser hired Mr. Atkins does not appear in the record, but on June 2, 1970, the survey appears to have been completed. During this time, the purchaser had also begun

doing some title research work herself and by the time the survey had been completed, she had examined the title to eight (8) blocks of the subject property. The property to be conveyed under the contract was a part of an old subdivision out of the original townsite of Francitas, Texas. The total acreage was about 100 acres which the sellers had under fences. The sellers reserved 10 lots in one certain block of the townsite. The record indicates that there were numerous record owners of the lots and blocks that made up the 100 acre tract. Although the sellers reserved and excepted from the sale, 10 lots in one particular block, the purchaser was to clear the title to this particular excepted tract simultaneously with the other property.

On September 21, 1970, some 10 months after the execution of the contract, an attorney then retained by the sellers wrote a letter to the purchaser in which he stated:

"I would suggest to you (purchaser) and Mr. Joines (seller) that you release your contract with him at once, as he has a buyer who will take the property title as is. Let us hear from you at once."

Sometime around May 4, 1971, the purchaser retained this same attorney as her attorney for the purpose of completing the title research work necessary for the filing of the trespass to try title suit.

This attorney testified that such work was performed in the fall and winter of 1971 through February 1972. The purchaser testified that at that time, the attorney told her that the necessary research work on the title to this property had been completed and that he was ready to file the suit. The attorney notified the purchaser that the cost of the lawsuit had increased approximately $2,000.00 due to the increased number of defendants requiring service. Even in view of the increased cost, the purchaser requested that the attorney should go forward with the lawsuit. The attorney then declined because he did not want to file the suit as a number of the probable defendants were clients of his. He suggested that another attorney file the suit. The purchaser agreed.

About one month later on March 16, 1972, the sellers received a letter from the first attorney, a Mr. Hamblen, wherein Hamblen stated that the purchaser was willing to go ahead with the deal, or she would turn the property back to the sellers upon the payment to her of $3,000.00 which she claimed she had put into the property. In April 1972, the purchaser received a letter with a quit claim deed enclosed from the sellers requesting that she sign the quit claim deed thereby releasing the contract of sale and removing cloud on the sellers' property. (The contract of sale had been placed of record.) The purchaser refused to sign the same.

Hamblen testified that prior to the March 16, 1972, letter, he assumed from the sellers' attitude that the sellers were not going to cooperate in the bringing of the title suit. He further testified that as early as September of 1970, while the title research work was going on, the sellers contacted him and stated that they did not want to go through with it; that they had found another purchaser. The record shows that the purchaser never filed a trespass to try title suit.

On January 17, 1973, the plaintiffs (sellers) filed this lawsuit against the defendant, purchaser. In plaintiffs' first amended petition, they assert among other things that the contract for sale is invalid or should not be unenforceable because the purchaser materially breached the contract by failing to close the transaction within a reasonable length of time after the execution of the same. In this connection, plaintiffs alleged that purchaser waited approximately two (2) years to commence the title research necessary to file a title suit and that by the time purchaser tendered performance, circumstances had so altered that the reasons that prompted plaintiffs to make the contract no longer existed. The plaintiffs prayed that the trial court enter judgment declaring the contract unenforceable and null and void and that such constitutes a cloud on plaintiffs' title.

The purchaser answered asserting that prosecution of the action to obtain the judg-

ment referred to in the contract was beyond her sole control and the failure to obtain such judgment was not due to any action or inaction on her part, but resulted from other causes beyond the control of the purchaser, including the lack of cooperation in the prosecution of such suit by the sellers. By way of cross-action, the purchaser prayed that she have judgment requiring sellers to specifically perform the contract or that she recover at least $10,350.45 in damages.

On September 13, 1974, prior to trial, plaintiffs moved for partial summary judgment contending that as a matter of law the contract obligated the defendant to undertake at her expense and upon her initiative the title suit referred to in the contract. On January 9, 1975, the trial court granted the summary judgment. Thereafter on a trial on the merits, the trial court entered judgment holding that although the purchaser was obligated to prosecute the title suit at her expense and initiative, the delay in initiating the suit was not unreasonable nor was it undue delay.

■ The sellers have appealed and bring forward only one point of error, that being "that the trial court erred in entering judgment that plaintiffs take nothing by their suit for the reason that the contract in question was not performed within a reasonable period of time." Before proceeding to determine the merits of the above point of error, we must first determine whether the above point constitutes a legal (no evidence) or factual (insufficient evidence) insufficiency point of error. Appellant is asserting that "as a matter of law" appellee did not perform within a reasonable time. In appellants' prayer for relief, they request that we reverse the trial court and *render* judgment for them. In light of the above, appellants' point of error can only be considered as a no evidence point of error. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 363, 364 (1960).

■ Our primary question is, whether there is any evidence to sustain the finding of the trial court that the delay in initiating

the title suit was not unreasonable nor was it undue delay. In determining whether there is in the record evidence of probative value to support the trial court's finding, the appellate court must examine the evidence and view it most favorably to the judgment and draw all reasonable inferences from such evidence. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Bodine v. Welder's Equipment Company,* 520 S.W.2d 407 (Tex.Civ.App.—Corpus Christi, 1975, Writ ref'd n. r. e.).

■ The contract for sale had no exact time for performance specified in it. When a contract is silent as to the time of its performance (as is the case here), the law implies an agreement that it will be performed in a reasonable time. *NHA, Inc. v. Jones,* 500 S.W.2d 940 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *H. L. McRae v. Lindale Independent School District,* 450 S.W.2d 118 (Tex.Civ.App.—Tyler 1970, writ ref'd n. r. e.); *Kleiman v. White,* 476 S.W.2d 375 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.); *Houston County v. Leo L. Landauer & Associates, Inc.,* 424 S.W.2d 458 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). The term (reasonable time) is a relative one, and its meaning differs according to the circumstances of each particular case including the nature and character of the thing to be done and the difficulties surrounding and attending its accomplishment. *Houston County v. Leo L. Landauer & Associates, Inc.,* supra; *Ridglea Interest, Inc. v. General Lumber Company,* 343 S.W.2d 490 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.); *Hamilton v. Shirley-Self Motor Co.,* 202 S.W.2d 952 (Tex.Civ. App.—Fort Worth 1947, writ ref'd n. r. e.).

■ In examining the evidence as it bears upon the finding of the trial court, it is clear to us that the judgment is supported by some evidence.

Shortly after the execution of the contract for sale, the purchaser hired the County Surveyor to accurately ascertain the amount of acreage held by the sellers and to cause the corner posts to be set. The subject contract provides:

"To correctly ascertain the acreage, Seller agrees to have said land surveyed and corner post set by a competent licensed surveyor and the amount of acreage shown thereby shall determine the sum of money to be paid."

This survey had to be completed before the title research could be started. The survey was completed in 1970. The evidence shows that the purchaser personally had done some of the title work at the title company in Edna before she retained Mr. Hamblen as her attorney for the purpose of completing the title research. It should be noted here that Hamblen had represented the sellers prior to being employed by the purchaser. In February 1972, the required title research work had been completed by Hamblen. About the time the title research had been completed, Mr. Hamblen notified the purchaser that the expected expense of the title suit had increased some $2,000.00 due to the increased number of defendants requiring service. This increased number of defendants indicates an increase in the complexity of the title research required. Even in view of the increased cost of the lawsuit, the purchaser requested that Mr. Hamblen go forward with the lawsuit.

Although a substantial period of time elapsed from the time the contract was executed to the time the sellers filed this lawsuit, such delay by the purchaser was shown to have been reasonable due to actions on the part of the sellers. The contract in part provides:

" . . . Seller agrees to *cooperate* with Purchaser at all reasonable times and places in an effort to diligently obtain a judgment of the District Court . . . awarding legal title to Seller so that the contract may be consummated as rapidly as possible." (Emphasis supplied)

Mr. Hamblen testified that prior to March 1972, he assumed from the sellers' attitude that they were not going to cooperate in the bringing of the title suit. He further testified that as early as September of 1970, while the title research work was going on, Mr. Joines (seller) contacted him stating that he did not want to go through with it and that he had found another purchaser. Mr. Joines (seller) in his deposition stated that there were two different parties who wanted to buy the land.

In March 1972, the purchaser wrote Mr. Joines (seller) wherein she stated that she was willing to go ahead with the deal or she would turn the property back to him upon the payment of $3,000.00 which she claimed she had put into the property. In April 1972, sellers responded by sending a quit claim deed to the purchaser requesting that she sign the quit claim deed, thereby releasing the contract of sale and removing the cloud on sellers' property. The purchaser refused to sign the deed. Mr. Hamblen also testified as to the necessity of cooperation from the sellers as follows:

"Q Okay, We have heard from another party what's involved as far as the research and the preparation of the pleadings and the notice and all of these matters in a trespass to try title suit. In your opinion, Mr. Hamblen, would it be possible for an attorney to successfully clear a title on a trespass to try title suit without the cooperation of the party so claiming the title?

A I don't think so. Because he has to make a statement under oath that he's claiming the title against all the world."

Mr. Hamblen admitted in a prior deposition that Mr. Joines (seller) had told him that he would not appear and testify in court.

In view of the circumstances of this case, i. e., the lack of present and prospective cooperation by sellers and the difficulties surrounding and attending its accomplishment (prosecution of the title suit without sellers' cooperation), we conclude that there was ample evidence of probative force to support the trial court's judgment.

The judgment of the trial court is AFFIRMED.