TRACTEBEL ENERGY MARKETING, INC. and Tractebel Power, Inc., Appellants,

v.

E.I. DU PONT DE NEMOURS AND COMPANY, Appellee.

No. 14–02–00406–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 2003.

---

Laura Rowe, Houston, for appellants.

Charles T. Miers, John M. Ribarits, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and FROST.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

SCOTT BRISTER, Chief Justice.

In its motion for rehearing, DuPont argues we erred in our opinion in stating that both parties objected to the omission of a basic-assumption instruction from the impracticability question submitted to the jury. In fact, DuPont (whose defensive issue this was) objected to the question for omitting the basic-assumption instruction, and also sought a lower standard on foreseeability;[1] Tractebel objected to the

---

1. The trial court refused to submit the following impracticability instructions proposed by DuPont:

   Question No. 2: Was DuPont justified in not complying with the contract?
   In determining whether DuPont was justified in not complying with the contract you may consider the following:
   Failure to comply is justified if DuPont's performance was impracticable.
   Where a party's performance is made impracticable by an event that was not expected to occur and the non-occurrence of the event was a basic assumption on which the contract was made, duty to render the performance under the contract is discharged. . . .

   Question No. 4: Was DuPont's repudiation of the agreement excused?
   In determining whether DuPont's repudiation was excused you may consider the following:
   . . .
   B. DuPont's repudiation is excused if:
   1. Performing the agreement was made impracticable by an event that was not expected to occur; and
   2. The non-occurrence of the event was a basic assumption on which DuPont made the agreement.

question for no pleadings, no evidence, and omission of an assigned-risk instruction.[2] Believing this requires neither a change in our analysis nor judgment, we overrule DuPont's motion for rehearing, and issue the following supplemental opinion.

Although Tractebel couched its objection in terms of "implicit assignment of risk" rather than "basic assumption," the two address the same issue. Many impracticability cases (including this one) address the problem arising in sales contracts when the seller's anticipated source of supply fails. As discussed in our opinion, if there was a basic assumption that only a particular source would be used, then the contract implicitly assigned the risk of failure of that source to the buyer (that is, there is no sale); conversely, if the parties shared no basic assumption about the source, then the risk was implicitly assigned to the seller (that is, the seller must perform using another source).[3] Whether the jury question is stated in terms of basic assumptions or implicit assignments of risk, both address the same issue—what the parties are deemed to have intended when a source of supply fails.

■ According to the Restatement, a judgment about the parties' basic assumptions is made by deciding to whom they implicitly assigned the risk:

Determining whether the non-occurrence of a particular event was or was not a basic assumption involves a judgment as to which party assumed the risk of its occurrence.[4]

Thus, when DuPont asked for a basic-assumption instruction and Tractebel asked for an assigned-risk instruction, they were both asking for the same thing.

■ Both parties requested limiting instructions on impracticability, and both pointed out the same omitted fact issue— whether the contract contemplated sale of only DuPont's credits or any others. Both would have barred impracticability as a defense if the contract contemplated the latter.[5] By refusing both instructions and submitting the charge without either an assigned-risk or basic-assumption instruction, the jury was allowed to find perform-

---

Performance may be impracticable because extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved. Increased cost alone does not excuse performance of an agreement unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance of the agreement.... [Citations to *Centex* and Restatement § 261 omitted.]

2. The court refused to submit the following impracticability instructions proposed by Tractebel:

(1) "A party is not excused from performance due to commercial impracticability where the facts or circumstances show that the parties expressly or implicitly assigned the risk of supervening commercial impracticability to the party seeking to be excused from performance."

(2) "In the absence of evidence to the contrary, it is presumed that DuPont agreed

to bear any loss occasioned by an event which was foreseeable at the time the agreement was made."

(3) "Impracticability occurs when: (1) the cost of performing the agreement has become totally impracticable because of an occurrence that was beyond the control of the parties; and (2) the parties could not reasonably foresee the occurrence when they made the agreement."

3. *See* text accompanying notes 18 through 34.

4. RESTATEMENT (SECOND) OF CONTRACTS ch. 11, introductory note, p. 311 (1981).

5. That is, if the contract contemplated credits from any source, then (1) the existence of DuPont's credits was not a basic assumption, and thus performance was not impracticable, or (2) the parties implicitly assigned the risk of cancellation of the credits to DuPont, and thus performance was not impracticable.

ance impracticable in either case. We hold both objections were sufficiently specific to make the trial court aware of the complaint.[6]

 In its response on rehearing, Tractebel argues our no-evidence review should be the same regardless of whether there was a proper objection. Generally, if no objection is made to the charge, legal sufficiency is measured against the charge actually given when the charge is "defective,"[7] but against the charge that should have been given when it is "incomplete."[8] Although "defective" charges are said to be those in which the court must resolve a legal issue before the jury can find the facts,[9] and "incomplete" charges are those in which an element of a claim or defense has been omitted,[10] the line is not an altogether clear one. Because both parties raised a proper objection here, we need not decide into which category this charge falls.

---

**6.** *See* Tex.R.App. P. 33.1(a)(1)(A).

**7.** *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex.2003).

**8.** *See* Tex.R. Civ. P. 279 (providing omission of element of claim or defense from charge without objection results in deemed finding in support of judgment if factually sufficient evidence supports it); *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982) (reversing plaintiff's malpractice verdict even though defendant did not object to omission of relevant negligence question, as deemed finding was not supported by evidence). In *Gulf States Utilities Co. v. Low,* the Court referred to Rule 279 as governing "incomplete" charges. 79 S.W.3d 561, 565 (Tex.2002). Although the Court said the rule "provides for deemed findings only as a basis for affirming the trial court's judgment ... [it] provides no basis to reverse for an omitted finding," the issue in that case was whether a plaintiff could rely on a deemed finding to get a judgment larger than the trial court rendered. *Id.* at 565–66.

**9.** *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000); *see, e.g., Wolff,* 94 S.W.3d at 529 (considering definition of joint enterprise that did not tie proof of elements to specific enterprise upon which liability was based); *Osterberg,* 12 S.W.3d at 55 (considering question that did not include substantial compliance as means of meeting Election Code requirements); *Allen v. Am. Nat'l Ins. Co.,* 380 S.W.2d 604, 608 (Tex.1964) (considering question that allowed jury to find misrepresentation if insured "should have known" of falsity).

**10.** *See, e.g., In re J.F.C.,* 96 S.W.3d 256, 263 (Tex.2002) (considering charge that omitted child's best interest as element of termination of parental rights); *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990) (considering charge that included contract damages but not damages from related tort); *Cielo Dorado Dev., Inc. v. Certainteed Corp.,* 744 S.W.2d 10, 11 (Tex. 1988) (considering charge that omitted element of notice of DTPA claim).