# NO. 12-04-00302-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICHARD MALATT,* *APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *C&R REFRIGERATION* *AND ROBERT REEVES,* *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

*OPINION*

Richard Malatt appeals the trial court's take-nothing judgment entered in favor of Appellees, C&R Refrigeration and Robert Reeves. Malatt raises five issues on appeal.[1] We affirm.

## BACKGROUND

Appellees are the manufacturers of industrial freezers. Two Ecuadorian corporations, Mundi Hielo, S.A.[2] and Pesqueria Progalca, S.A. (collectively "Mundi Hielo) purchased from Appellees an Individual Quick Freeze ("IQF") machine, which is designed to freeze individual pieces of food very rapidly. The terms of purchase required Mundi Hielo to make a $62,500 deposit on the machine prior to its construction, an additional payment when construction was half completed, and a final

---

[1] In his reply brief, Malatt acknowledges that the issues are narrowed as the result of positions taken by Appellees in their brief. Thus, we do not consider Malatt's second issue, whether he, as assignee, can be liable for breach of contract; his third issue, whether the trial court could rescind or cancel the contract; or as a sub-issue, whether the evidence is sufficient to support that C&R used its "best efforts" to sell the IQF machine.

[2] Mundi is an Ecuadorian shrimping company.

payment prior to Appellees' shipping the machine to Mundi Hielo. Mundi Hielo paid the initial deposit to Appellees, who began to construct the IQF machine. However, Mundi Hielo failed to make any further payments. Appellees ceased production on the machine and refused to return the initial deposit to Mundi Hielo. Subsequently, Appellees and Mundi Hielo entered into a settlement agreement. Mundi Hielo assigned Malatt its interest in the $62,500 deposit being held by Appellees.

The instant lawsuit arises from a dispute concerning a provision in the settlement agreement. The settlement agreement states, in pertinent part, as follows:

3.      C&R's Performance Obligations

....

(c)      C&R shall use its best efforts to market and sell, in an expeditious and commercially reasonable manner, the IQF Machine currently located in the C&R facility in Center, Texas, and for which Mundi has paid to C&R a deposit of $62,500. C&R shall refund the deposit to Mundi, or its nominee, net any offsets, immediately upon sale of the IQF Machine to a third party.

After the agreement was reached, the shrimp market collapsed.[3] Over the next three years, Appellees were unable to sell the IQF Machine. On January 22, 2003, Appellees sued Malatt for breach of contract and sought to rescind the settlement agreement. Malatt filed a counterclaim, alleging, among other things, breach of contract on Appellees' part, and sought attorney's fees.

Following a bench trial, the trial court entered a final judgment in favor of Appellees, ordering that C&R be discharged from its obligation to use its best efforts to sell the IQF machine. The trial court's findings of fact and conclusions of law state, in pertinent part, as follows:

**Findings of Fact**

The court makes the following findings of fact in this case:

....

8.      The Settlement Agreement called for a best effort on behalf of C&R and/or Reeves to sell the subject IQF System in a commercially reasonable and expeditious manner; further, if the IQF Machine were sold, C&R was to pay the deposit, net any offsets, to Malatt.

---

[3] This particular IQF machine was specifically designed for freezing shrimp.

9. The Settlement Agreement did not require C&R and Reeves to actually sell the IQF.

10. Due to the unique nature of the IQF, combined with the current state of the shrimp market to which C&R sells, there is simply no buyer for the IQF.

11. The IQF has not been sold; it remains at C&R's facilities.

12. Under the Settlement Agreement, Malatt was entitled to the deposit only when the IQF was sold.

13. C&R and Reeves are not obligated to refund the deposit to Malatt.

14. Since entering into the Settlement Agreement, in attempting to sell the IQF, C&R and Reeves over a period of three plus years did the following:

   (1) bought advertising in shrimp and seafood publications;

   (2) called on numerous contacts in the shrimping industry from a listing known as the Shrimp Directory to market IQF Machines;

   (3) made numerous quotes concerning IQF Machines to many potential buyers;

   (4) made trips to direct market in person IQF Machines, including the subject IQF; and

   (5) put IQF Machines on its website.

15. Such efforts were sufficient to satisfy the best efforts obligation of C&R and Reeves in the Settlement Agreement.

16. C&R and Reeves in fact used their best efforts to sell the subject IQF.

17. C&R and Reeves have fulfilled their obligation to use their best efforts to sell the subject IQF machine.

18. Moreover, due to market forces which were not predictable at the time and were beyond the control of either party to the Settlement Agreement, the provisions calling for the effort to sell the subject IQF System became unduly burdensome and in fact unworkable, despite due diligence on behalf o[f] C&R and Reeves.

19. For example, although manufactured for use in Latin America, the un-marketability of a product whose components can no longer be warranted is not peculiar to Latin America and would be universally the case. This put everyone in the position of wanting the deposit but no one wanting the partially built IQF System.

20. C&R and Reeves fulfilled the best efforts obligation of the Settlement Agreement and they are discharged from their obligations under the Settlement Agreement.

## Conclusions of Law

The court makes the following conclusions of law in this case:

3

....

3.      C&R and Reeves did not breach the Settlement Agreement.

4.      C&R's and Reeves' efforts over a three year plus period to sell the IQF were sufficient to satisfy the best efforts obligation under the Settlement Agreement.

5.      C&R and Reeves have discharged their obligation to use their best efforts to sell the subject IQF.

This appeal followed.

## CONTRACTUAL CONSTRUCTION

In his first issue, Malatt argues that the sale of the IQF machine was not a condition precedent to Appellees' obligation to return the deposit, but rather, related solely to the timing of Appellees' obligation to refund the deposit.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962).

If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker*, 361 S.W.2d at 393. An ambiguity may be either "patent" or "latent." *See CBI*, 907 S.W.2d at 520. A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter, and an ambiguity appears by reason of some collateral matter. *See id.*[4]

The interpretation of an unambiguous contract is a question of law, which we review de

---

[4] For example, if a contract called for goods to be delivered to "the green house on Pecan Street," and there were, in fact, two green houses on Pecan Street, a latent ambiguity would arise. *See id.* n.4.

4

novo. *See MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

In interpreting a contract, we must presume that the parties thereto intended every clause to have some effect; therefore, we consider each part of the document with every other part of the document so that the effect and meaning of one part on any other part may be determined. *See Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied). Moreover, we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. *Id.* Finally, we enforce an unambiguous agreement as written. *Id.* We are not permitted to rewrite an agreement to mean something it did not. *Id.* We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it. *Id.* Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Id.*

Here, while neither party argues that the agreement is ambiguous, each interprets its language differently, and neither concedes that its interpretation of the relevant passages is any less reasonable than the other party's interpretation of the same. At the heart of the issue is the $62,500 deposit and whether its return to Malatt was conditioned on Appellees' ability to sell the IQF machine as outlined by the terms of the agreement.

Conditions precedent to an obligation to perform under a contract are those acts or events occurring subsequent to the making of a contract that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *See Beacon Nat'l Ins. Co. v. Glaze*, 114 S.W.3d 1, 2 (Tex. App.–Tyler 2003, pet. denied) (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976)).

Malatt first argues that by pleading in his counterclaim that all conditions precedent had been met, an allegation not specifically denied by Appellees, he met his burden of proof on the issue and that C&R is not permitted to prove that a condition precedent had not been performed to avoid the judgment. *See* TEX. R. CIV. P. 54. However, in its original petition, C&R specifically pleaded that

it was "unable to sell th[e] freezer unit." Furthermore, in its pleadings, C&R stated that it "used its best efforts to sell [the IQF machine], however, neither C&R nor the court has any control over the market forces that prevent the sale of the freezer unit." We conclude that C&R's pleadings specifically controvert the assertion that, if in fact the sale of the IQF machine was a condition precedent to C&R's obligation to return the deposit to Malatt, such condition precedent had been satisfied. Therefore, C&R has satisfied the specific denial requirement set forth in Rule 54.[5]

We next consider whether the sale of the IQF machine was a condition precedent to Appellees' returning the deposit. To iterate, the contract stated as follows:

> C&R shall use its best efforts to market and sell, in an expeditious and commercially reasonable manner, the IQF Machine currently located in the C&R facility in Center, Texas, and for which Mundi has paid to C&R a deposit of $62,500. C&R shall refund the deposit to Mundi, or its nominee, net any offsets, immediately upon sale of the IQF Machine to a third party.

The plain language of the agreement does not obligate Appellees to sell the IQF machine, but rather, requires that C&R "shall use its best efforts to market and sell" the machine "in an expeditious and commercially reasonable manner." Malatt argues that the aforementioned provision relates to the timing of repayment only. While the matter of timing is inherent to any condition precedent, Malatt's argument presupposes that C&R was, in fact, required by the agreement to sell the machine. To the contrary, the contract contains no such mandate. Furthermore, the contract makes no provision concerning what course of action was to be undertaken should C&R fail to sell the IQF machine.

Unlike *Wisznia v. Wilcox,* 438 S.W.2d 874, 876 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.), upon which Malatt relies to support his contention that the aforementioned provision related strictly to the timing of an absolute obligation to pay, the contract in the instant case contains no "express, unqualified[,] and unconditional promise" to repay the deposit. *Id.* Rather, there is an unconditional promise by Appellees to use their best efforts to market and sell the IQF machine. No

---

[5] The record further reflects that Malatt did not object to any such defects in Appellees' pleadings before the trial court signed the judgment in this case. *See* TEX. R. CIV. P. 90. In his reply brief, Malatt concedes that the trial court had the power to enter judgment based on C&R's claim regarding a condition precedent irrespective of Appellees' pleadings.

reference is made to any obligation to refund the deposit absent the sale of the machine.

Malatt next argues that even C&R's employment of its best efforts to sell the machine does not excuse it from refunding the deposit to him. Specifically, Malatt, citing *Jones v. Burke,* 540 S.W.2d 798, 801 (Tex. Civ. App.–Corpus Christi 1976, no writ), contends that because the agreement does not specify a time in which to refund the deposit, the law implies an agreement to act within a reasonable time. Indeed, the agreement is silent as to the time period during which Appellees are required to use their best efforts to sell the IQF machine. However, even if the law implies that a contractual obligation will be performed in a reasonable time when no exact time for performance is specified in the contract, such an implication does not further serve to burden the parties to a contract with implied obligations to which they did not agree. Unlike the contract in *Jones,* pursuant to which the purchaser had an absolute obligation to pay, *see Jones,* 540 S.W.2d at 799, the contract in the instant case only obligates Appellees to use their best efforts to sell the IQF machine.

Finally, Malatt argues that the contract contains no language that would indicate a condition precedent. However, while certain terms such as "if," "provided that," "on condition that," or some other phrase ordinarily connote the parties' intent that there be a condition precedent, no particular words are necessary for the existence of such a condition. *See Hohenberg Bros. Co.,* 537 S.W.2d at 3. We iterate that conditions precedent are acts or events occurring subsequent to the making of a contract that must occur before there is a right to immediate performance. *See Glaze,* 114 S.W.3d at 2. Since the contract required Appellees to refund the deposit to Malatt immediately upon sale of the IQF Machine to a third party, the sale of the IQF machine was the event that was required to occur before Malatt was entitled to a refund of the deposit. But we must consider the entire agreement and note that no language in the contract required Appellees to sell the machine. Thus, the term "upon the sale of the IQF machine" can be reasonably interpreted as a condition similar to the term "on condition that" inasmuch as the sale of the IQF machine is an event that is not certain to occur, since it was not an absolute obligation under the terms of the contract.

We conclude that the contract required C&R to use its best efforts to market and sell the IQF machine in an expeditious and commercially reasonable manner, and, upon the sale of the ICF machine, C&R was required to immediately refund the $62,500 deposit to Mundi or its nominee.

However, we further conclude that there was no requirement that C&R sell the machine if its best efforts could not permit it to do so. Thus, we hold that the trial court correctly held that (1) Malatt was entitled to the deposit only when the IQF was sold and (2) that the sale of the IQF machine was not a contractual requirement. Malatt's first issue is overruled.

## DISCHARGE OF OBLIGATION AND IMPRACTICABILITY

In his fourth issue, Malatt argues that the defense of impracticability is not applicable and does not excuse performance by C&R and Reeves. However, before we consider such a defense to a party's obligation to perform, we must necessarily consider if the party did not, in fact, perform. The trial court found that Appellees had discharged their obligation to use their best efforts to sell the subject IQF.[6]

### Discharge of Obligation

As we have discussed previously, C&R was not obligated under the agreement to sell the IQF machine. Rather, it was obligated to use its "best efforts" to sell the machine. In his reply brief, Malatt states that he "does not dispute the trial court's finding that C&R used its best efforts to sell the IQF freezer." However, Malatt has argued that the law implies a reasonable time to perform contractual obligations when no exact time period is stated in the contract. *See Jones,* 540 S.W.2d at 801.

Given Appellees' contractual obligation, the rule in *Jones* could create an implied agreement between the parties that C&R is required to use its best efforts *for a reasonable time* to sell the IQF machine in a commercially reasonable manner. The trial court found that Appellees employed various tactics for more than three years to sell the IQF machine and, in so doing, satisfied their obligation to use "best efforts" under the contract. On appeal, Malatt does not dispute that Appellees satisfied their "best efforts" obligation. Furthermore, he does not raise any argument that the "three

---

[6] The trial court also found as follows:

Moreover, due to market forces which were not predictable at the time and were beyond the control of either party to the Settlement Agreement, the provisions calling for the effort to sell the subject IQF System became unduly burdensome and in fact unworkable, despite due diligence on behalf o[f] C&R and Reeves.

year plus" time frame referenced in the trial court's findings of fact is an unreasonable time period. Therefore, we will not disturb the trial court's unchallenged finding. We hold that Appellees satisfied their obligation pursuant to the agreement to use their best efforts to market and sell, in an expeditious and commercially reasonable manner, the IQF Machine.

## Impracticability

Commercial impracticability is a defense to performance of a contract in Texas. *See Tractabel Energy Mktg., Inc. v. E.I. DuPont de Nemours & Co.*, 118 S.W.3d 60, 64 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).[7] Here, since the trial court's finding that Appellees fulfilled their best efforts to market and sell the IQF machine is not challenged on appeal, we need not address the trial court's alternate finding related to the defense of impracticability. Malatt's fourth issue is overruled.

## ATTORNEY'S FEES

In his fifth issue, Malatt argues that he is entitled to attorney's fees and costs. Malatt's claim in this regard is premised on his counterclaim for breach of contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997). Since we have upheld the trial court's finding that Appellees satisfied their obligation under the agreement, it follows that Malatt is not entitled to recover attorney's fees and costs pursuant to Section 38.001(8). Malatt's fifth issue is overruled.

## DISPOSITION

Having overruled Malatt's issues one and four, we *affirm* the trial court's judgment.

JAMES T. WORTHEN  
Chief Justice

Opinion delivered October 12, 2005.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*

(PUBLISH)

---

[7] The court's opinion was supplemented by *Tractabel Energy Mktg., Inc. v. E.I. DuPont de Nemours & Co.*, 118 S.W.3d 929 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 12, 2005

### NO. 12-04-00302-CV

**RICHARD MALATT,**

Appellant

V.

**C&R REFRIGERATION AND ROBERT REEVES,**

Appellee

---

Appeal from the 273rd Judicial District Court
of Shelby County, Texas. (Tr.Ct.No. 03CV-27749)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being inspected, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **BE IN ALL THINGS AFFIRMED**, and that all costs of this appeal are hereby adjudged against the Appellant, **RICHARD MALATT**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*