NO.
12-04-00302-CV

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

RICHARD
MALATT,                                       §                 APPEAL FROM THE 273RD

APPELLANT

 

 

V.                                                                         §                 JUDICIAL DISTRICT COURT OF

 

C&R REFRIGERATION

AND ROBERT REEVES,

APPELLEES                                                     §                 SHELBY COUNTY, TEXAS

                                                                                                                                                           


                                                                      OPINION

Richard
Malatt appeals the trial court’s take-nothing judgment entered in favor of
Appellees, C&R Refrigeration and Robert Reeves.  Malatt raises five issues on appeal.[1]  We affirm.

 

Background








Appellees
are the manufacturers of industrial freezers. 
Two Ecuadorian corporations, Mundi Hielo, S.A.[2]
and Pesqueria Progalca, S.A. (collectively “Mundi Hielo) purchased from
Appellees an Individual Quick Freeze (“IQF”) machine, which is designed to
freeze individual pieces of food very rapidly. 
The terms of purchase required Mundi Hielo to make a $62,500 deposit on
the machine prior to its construction, an additional payment when construction
was half completed, and a final payment prior to Appellees’ shipping the
machine to Mundi Hielo.  Mundi Hielo paid
the initial deposit to Appellees, who began to construct the IQF machine.  However, Mundi Hielo failed to make any
further payments.  Appellees ceased
production on the machine and refused to return the initial deposit to Mundi
Hielo.  Subsequently, Appellees and Mundi
Hielo entered into a settlement agreement. 
Mundi Hielo assigned Malatt its interest in the $62,500 deposit being
held by Appellees.

The
instant lawsuit arises from a dispute concerning a provision in the settlement
agreement.  The settlement agreement
states, in pertinent part, as follows:

 

3.             C&R’s
Performance Obligations

 

....

 

(c)           C&R shall use its best efforts to market and sell, in
an expeditious and commercially reasonable manner, the IQF Machine currently
located in the C&R facility in Center, Texas, and for which Mundi has paid
to C&R a deposit of $62,500.  C&R
shall refund the deposit to Mundi, or its nominee, net any offsets, immediately
upon sale of the IQF Machine to a third party.

 

 

After
the agreement was reached, the shrimp market collapsed.[3]  Over the next three years, Appellees were
unable to sell the IQF Machine.  On
January 22, 2003, Appellees sued Malatt for breach of contract and sought to
rescind the settlement agreement.  Malatt
filed a counterclaim, alleging, among other things, breach of contract on
Appellees’ part, and sought attorney’s fees.

Following
a bench trial, the trial court entered a final judgment  in favor of Appellees, ordering that C&R
be discharged from its obligation to use its best efforts to sell the IQF
machine.  The trial court’s findings of
fact and conclusions of law state, in pertinent part, as follows:

 

Findings of Fact

 

The court makes the following findings of fact in this
case:

....

 

8.             The Settlement Agreement called for a best effort on
behalf of C&R and/or Reeves to sell the subject IQF System in a
commercially reasonable and expeditious manner; further, if the IQF Machine
were sold, C&R was to pay the deposit, net any offsets, to Malatt.








9.             The Settlement Agreement did not require C&R and
Reeves to actually sell the IQF.

 

10.           Due to the unique nature of the IQF, combined with the
current state of the shrimp market to which C&R sells, there is simply no
buyer for the IQF.

 

11.           The IQF has not been sold; it remains
at C&R’s facilities.

 

12.           Under the Settlement Agreement, Malatt was entitled to the
deposit only when the IQF was sold.

 

13.           C&R and Reeves are not obligated
to refund the deposit to Malatt.

 

14.           Since entering into the Settlement Agreement, in
attempting to sell the IQF, C&R and Reeves over a period of three plus
years did the following:

 

(1)           bought advertising in shrimp and
seafood publications;

 

(2)           called on numerous contacts in the shrimping industry from
a listing known as the Shrimp Directory to market IQF Machines;

 

(3)           made numerous quotes concerning IQF Machines to many
potential buyers;

 

(4)           made trips to direct market in person IQF Machines,
including the subject IQF; and

 

(5)           put IQF Machines on its website.

 

15.           Such efforts were sufficient to satisfy the best efforts obligation
of C&R and Reeves in the Settlement Agreement.

 

16.           C&R and Reeves in fact used their
best efforts to sell the subject IQF.

 

17.           C&R and Reeves have fulfilled their obligation to use
their best efforts to sell the subject IQF machine.

 

18.           Moreover, due to market forces which were not predictable
at the time and were beyond the control of either party to the Settlement
Agreement, the provisions calling for the effort to sell the subject IQF System
became unduly burdensome and in fact unworkable, despite due diligence on
behalf o[f] C&R and Reeves.

 

19.           For example, although manufactured for use in Latin
America, the un-marketability of a product whose components can no longer be
warranted is not peculiar to Latin America and would be universally the
case.  This put everyone in the position
of wanting the deposit but no one wanting the partially built IQF System.

 

20.           C&R and Reeves fulfilled the best efforts obligation
of the Settlement Agreement and they are discharged from their obligations under
the Settlement Agreement.

 

Conclusions of Law

 

The court makes the following conclusions of law in
this case:








....

 

3.             C&R and Reeves did not breach
the Settlement Agreement.

 

4.             C&R’s and Reeves’ efforts over a three year plus
period to sell the IQF were sufficient to satisfy the best efforts obligation
under the Settlement Agreement.

 

5.             C&R and Reeves have discharged their obligation to
use their best efforts to sell the subject IQF.

 

 

This appeal
followed.

 

Contractual Construction

In
his first issue, Malatt argues that the sale of the IQF machine was not a
condition precedent to Appellees’ obligation to return the deposit, but rather,
related solely to the timing of Appellees’ obligation to refund the deposit.  

In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983); see also Nat’l Union Fire Ins. Co. of Pittsburgh, PA v.
CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  To achieve this objective, courts should
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.  Id.  No single provision taken alone will be given
controlling effect; rather, all the provisions must be considered with
reference to the whole instrument.  Id.;
Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196
(Tex. 1962).

If
the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous, and the court will
construe the contract as a matter of law. 
Coker, 361 S.W.2d at 393.  
An ambiguity may be either “patent” or “latent.”  See CBI, 907 S.W.2d at
520.  A patent ambiguity is evident on
the face of the contract.  Id.  A latent ambiguity arises when a contract
that is unambiguous on its face is applied to the subject matter, and an
ambiguity appears by reason of some collateral matter.  See id.[4]








The
interpretation of an unambiguous contract is a question of law, which we review
de novo.  See MCI Telecomm. Corp.
v. Texas Util. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999).  Ambiguity does not arise simply because the
parties advance conflicting interpretations of the contract; rather, for an
ambiguity to exist, both interpretations must be reasonable.  Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000).

In
interpreting a contract, we must presume that the parties thereto intended
every clause to have some effect; therefore, we consider each part of the
document with every other part of the document so that the effect and meaning
of one part on any other part may be determined.  See Birnbaum v. Swepi LP, 48
S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied).  Moreover, we give terms their plain,
ordinary, and generally accepted meaning unless the instrument shows that  the parties used such terms in a technical or
different sense.  Id.  Finally, we enforce an unambiguous  agreement as written.  Id.  We are not permitted to rewrite an agreement
to mean something it did not.  Id.  We cannot change the contract simply because
we or one of the parties comes to dislike its provisions or thinks that
something else is needed in it.  Id.  Parties to a contract are masters of their
own choices and are entitled to select what terms and provisions to include in
or omit from a contract.  Id.  

Here,
while neither party argues that the agreement is ambiguous, each interprets its
language differently, and neither concedes that its interpretation of the
relevant passages is any less reasonable than the other party’s interpretation
of the same.  At the heart of the issue
is the $62,500 deposit and whether its return to Malatt was conditioned on
Appellees’ ability to sell the IQF machine as outlined by the terms of the
agreement.

Conditions
precedent to an obligation to perform under a contract are those acts or events
occurring subsequent to the making of a contract that must occur before there
is a right to immediate performance and before there is a breach of contractual
duty.  See Beacon Nat’l Ins. Co. v.
Glaze, 114 S.W.3d 1, 2 (Tex. App.–Tyler 2003, pet. denied) (citing Hohenberg
Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex.1976)).








Malatt
first argues that by pleading in his counterclaim that all conditions precedent
had been met, an allegation not specifically denied by Appellees, he met his
burden of proof on the issue and that C&R is not permitted to prove that a
condition precedent had not been performed to avoid the judgment.  See Tex.
R. Civ. P. 54.  However, in its
original petition, C&R specifically pleaded that it was “unable to sell
th[e] freezer unit.”  Furthermore, in its
pleadings, C&R stated that it “used its best efforts to sell [the IQF
machine], however, neither C&R nor the court has any control over the
market forces that prevent the sale of the freezer unit.”  We conclude that C&R’s pleadings
specifically controvert the assertion that, if in fact the sale of the IQF
machine was a condition precedent to C&R’s obligation to return the deposit
to Malatt, such condition precedent had been satisfied.  Therefore, C&R has satisfied the specific
denial requirement set forth in Rule 54.[5]  

We
next consider whether the sale of the IQF machine was a condition precedent to
Appellees’ returning the deposit.  To
iterate, the contract stated as follows:

 

C&R shall use its best efforts to market and sell,
in an expeditious and commercially reasonable manner, the IQF Machine currently
located in the C&R facility in Center, Texas, and for which Mundi has paid
to C&R a deposit of $62,500.  C&R
shall refund the deposit to Mundi, or its nominee, net any offsets, immediately
upon sale of the IQF Machine to a third party.

 

 

The plain
language of the agreement does not obligate Appellees to sell the IQF machine,
but rather, requires that C&R “shall use its best efforts to market and
sell” the machine “in an expeditious and commercially reasonable manner.”  Malatt argues that the aforementioned
provision relates to the timing of repayment only.  While the matter of timing is inherent to any
condition precedent, Malatt’s argument presupposes that C&R was, in fact,
required by the agreement to sell the machine. 
To the contrary, the contract contains no such mandate.  Furthermore, the contract makes no provision
concerning what course of action was to be undertaken should C&R fail to
sell the IQF machine.  








Unlike
Wisznia v. Wilcox, 438 S.W.2d 874, 876 (Tex. Civ. App.–Corpus
Christi 1969, writ ref’d n.r.e.), upon which Malatt relies to support his
contention that the aforementioned provision related strictly to the timing of
an absolute obligation to pay, the contract in the instant case contains no
“express, unqualified[,] and unconditional promise” to repay the deposit.  Id.  Rather, there is an unconditional promise by
Appellees to use their best efforts to market and sell the IQF machine.  No reference is made to any obligation to
refund the deposit absent the sale of the machine. 

Malatt
next argues that even C&R’s employment of its best efforts to sell the
machine does not excuse it from refunding the deposit to him.  Specifically, Malatt, citing Jones v.
Burke, 540 S.W.2d 798, 801 (Tex. Civ. App.–Corpus Christi 1976, no
writ), contends that because the agreement does not specify a time in which to
refund the deposit, the law implies an agreement to act within a reasonable
time.  Indeed, the agreement is silent as
to the time period during which Appellees are required to use their best
efforts to sell the IQF machine. 
However, even if the law implies that a contractual obligation will be
performed in a reasonable time when no exact time for performance is specified
in the contract, such an implication does not further serve to burden the
parties to a contract with implied obligations to which they did not
agree.  Unlike the contract in Jones,
pursuant to which the purchaser had an absolute obligation to pay, see Jones,
540 S.W.2d at 799, the contract in the instant case only obligates
Appellees to use their best efforts to sell the IQF machine.

Finally,
Malatt argues that the contract contains no language that would indicate a
condition precedent.  However, while
certain terms such as “if,” “provided that,” “on condition that,” or some other
phrase ordinarily connote the parties’ intent that there be a condition
precedent, no particular words are necessary for the existence of such a
condition.  See Hohenberg Bros.
Co., 537 S.W.2d at 3.  We iterate
that conditions precedent are acts or events occurring subsequent to the making
of a contract that must occur before there is a right to immediate performance.  See Glaze, 114 S.W.3d at
2.  Since the contract required Appellees
to refund the deposit to Malatt immediately upon sale of the IQF Machine to a
third party, the sale of the IQF machine was the event that was required to
occur before Malatt was entitled to a refund of the deposit.  But we must consider the entire agreement and
note that no language in the contract required Appellees to sell the
machine.  Thus,  the term “upon the sale of the IQF machine”
can be reasonably interpreted as a condition similar to the term “on condition
that” inasmuch as the sale of the IQF machine is an event that is not certain
to occur, since it was not an absolute obligation under the terms of the
contract.








We
conclude that the contract required C&R to use its best efforts to market
and sell the IQF machine in an expeditious and commercially reasonable manner,
and, upon the sale of the ICF machine, C&R was required to immediately
refund the $62,500 deposit to Mundi or its nominee.   However, we further conclude that there was
no requirement that C&R sell the machine if its best efforts could not
permit it to do so.  Thus, we hold that
the trial court correctly held that (1) 
Malatt was entitled to the deposit only when the IQF was sold and (2)
that the sale of the IQF machine was not a contractual requirement.  Malatt’s first issue is overruled.

 

Discharge of Obligation and Impracticability

In
his fourth issue, Malatt argues that the defense of impracticability is not
applicable and

does not excuse
performance by C&R and Reeves. 
However, before we consider such a defense to a party’s obligation to
perform, we must necessarily consider if the party did not, in fact,
perform.  The trial court found that
Appellees had  discharged their
obligation to use their best efforts to sell the subject IQF.[6]  

Discharge
of Obligation

As
we have discussed previously, C&R was not obligated under the agreement to
sell the IQF machine.  Rather, it was
obligated to use its “best efforts” to sell the machine.  In his reply brief, Malatt states that he
“does not dispute the trial court’s finding that C&R used its best efforts
to sell the IQF freezer.”  However,
Malatt has argued that the law implies a reasonable time to perform contractual
obligations when no exact time period is stated in the contract.  See Jones, 540 S.W.2d at 801.








Given
Appellees’ contractual obligation, the rule in Jones could create
an implied agreement between the parties that C&R is required to use its
best efforts for a reasonable time to sell the IQF machine in a
commercially reasonable manner.  The
trial court found that Appellees employed various tactics for more than three
years  to sell the IQF machine and, in so
doing, satisfied their obligation to use “best efforts” under the
contract.  On appeal, Malatt does not
dispute that Appellees satisfied their “best efforts” obligation.  Furthermore, he does not  raise any argument that the “three year plus”
time frame referenced in the trial court’s findings of fact is an unreasonable
time period.  Therefore, we will not
disturb the trial court’s unchallenged finding. 
We hold that Appellees satisfied their obligation pursuant to the
agreement to use their best efforts to market and sell, in an expeditious and
commercially reasonable manner, the IQF Machine.

Impracticability

Commercial
impracticability is a defense to performance of a contract in Texas.  See Tractabel Energy Mktg., Inc. v.
E.I. DuPont de Nemours & Co., 118 S.W.3d 60, 64 (Tex. App.–Houston
[14th Dist.] 2003, pet. denied).[7]  Here, since the trial court’s finding that
Appellees fulfilled their best efforts to market and sell the IQF machine is
not challenged on appeal, we need not address the trial court’s alternate
finding related to the defense of impracticability.  Malatt’s fourth issue is overruled.

 

Attorney’s Fees 

In
his fifth issue, Malatt argues that he is entitled to attorney’s fees and
costs.  Malatt’s claim in this regard is
premised on his counterclaim for breach of contract.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997).  Since we have upheld the trial court’s
finding that Appellees  satisfied their
obligation under the agreement, it follows that Malatt is not entitled to
recover attorney’s fees and costs pursuant to Section 38.001(8).  Malatt’s fifth issue is overruled.

 

Disposition

Having
overruled Malatt’s issues one and four, we affirm the trial
court’s judgment.

 

   JAMES T. WORTHEN   

   Chief Justice

Opinion delivered October 12,
2005.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

                                                                     (PUBLISH)











[1] In his reply brief, Malatt acknowledges that the
issues are narrowed as the result of positions taken by Appellees in their brief.  Thus, we do not consider Malatt’s second
issue, whether he, as assignee, can be liable for breach of contract; his third
issue, whether the trial court could rescind or cancel the contract; or as a
sub-issue, whether the evidence is sufficient to support that C&R used its
“best efforts” to sell the IQF machine.





[2]
Mundi is an Ecuadorian shrimping company.





[3] This particular IQF machine was specifically designed
for freezing shrimp.





[4]
For example, if a contract called for goods to
be delivered to “the green house on Pecan Street,” and there were, in fact, two
green houses on Pecan Street, a latent ambiguity would arise.  See id. n.4.





[5] The record further reflects that Malatt did not object
to any such defects in Appellees’ pleadings before the trial court signed the
judgment in this case.  See Tex. R. Civ. P. 90.  In his reply brief, Malatt concedes that the
trial court had the power to enter judgment based on C&R’s claim regarding
a condition precedent irrespective of Appellees’ pleadings.





[6] The trial court also found as follows:

 

Moreover,
due to market forces which were not predictable at the time and were beyond the
control of either party to the Settlement Agreement, the provisions calling for
the effort to sell the subject IQF System became unduly burdensome and in fact
unworkable, despite due diligence on behalf o[f] C&R and Reeves.

 

 





[7]
The court’s opinion was supplemented by Tractabel
Energy Mktg., Inc. v. E.I. DuPont de Nemours & Co., 118 S.W.3d 929
(Tex. App.–Houston [14th Dist.] 2003, pet. denied).